IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TERI CALLEN
on behalf of herself and all others
similarly situated
formerly known as
Teri Kimball-Callen Stomski,

     Plaintiff,

       v.

 

DAIMLER AG, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:19-CV-1411-TWT

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the
Defendants' Motion to Dismiss [Doc. 61] the Plaintiffs' Second Amended
Complaint [Doc. 59]. For the reasons set forth below, the Defendants' Motion
to Dismiss [Doc. 61] is GRANTED in part and DENIED in part.

### I.  Background

The Plaintiffs are 13 individuals who bring this putative class action
against Defendants Daimler AG ("Daimler") and Mercedes Benz USA, LLC
("Mercedes") for breach of warranty and deceptive trade practices involving the
interior wood trim of the Defendants' vehicles. (Second Am. Compl. ¶¶ 1–2.)
This motion concerns the Plaintiffs' Second Amended Complaint, which was

T:\ORDERS\19\Callen\mtdtwt2.docx

filed after the Court dismissed several of their claims in a June 17, 2020 Order ("June 17 Order"). *See Callen v. Daimler AG*, No. 1:19-CV-1411-TWT, 2020 WL 10090879 (N.D. Ga. June 17, 2020). The Second Amended Complaint adds nine new Plaintiffs to the original four but otherwise reincorporates the same factual allegations regarding the premature fading and discoloration of the wood trim, the affected vehicle model and years ("Class Vehicle"), and the Defendants' knowledge and concealment of the defect.[1] (*Compare, e.g.*, Second Am. Compl. ¶¶ 1–16, 54–73, *with* First Am. Compl. ¶¶ 1–16, 45–64.) The Court summarized these allegations in detail in the June 17 Order. *See* Callen, 2020 WL 10090879, at *1–4.

Like the original Plaintiffs, the new Plaintiffs bring several state

---

[1] The following are the new Plaintiffs added in the Second Amended Complaint: Plaintiff Figueroa is a resident and citizen of Ohio who purchased his Class Vehicle from an authorized Mercedes dealership in Ohio. (Second Am. Compl. ¶ 21.) Plaintiff Scudder is a resident and citizen of Florida who purchased his Class Vehicle from a private seller in Florida. (*Id.* ¶ 22.) Plaintiff Fulmer is a resident and citizen of Georgia who purchased her Class Vehicle from an authorized Mercedes dealership in Georgia. (*Id.* ¶ 23.) Plaintiff Rosenfeld is a resident and citizen of Nebraska who purchased his Class Vehicle from a third-party dealership in Nebraska. (*Id.* ¶ 24.) Plaintiff Armstrong is a resident and citizen of Missouri who purchased her Class Vehicle from an authorized Mercedes dealership in Texas. (*Id.* ¶ 25.) Plaintiff Hunter is a resident and citizen of California who purchased his Class Vehicle from an authorized Mercedes dealership in California. (*Id.* ¶ 26.) Plaintiff Hall is a resident and citizen of Texas who purchased his Class Vehicle from an authorized Mercedes dealership in Texas. (*Id.* ¶ 27.) Plaintiff Farrow is a resident and citizen of Maryland who purchased his Class Vehicle from an authorized Mercedes dealership in Maryland. (*Id.* ¶ 28.) And Plaintiff Acunto is a resident and citizen of New York who purchased his Class Vehicle online from a third-party dealership in Tennessee. (*Id.* ¶¶ 29, 318.)

common law and consumer protection act claims and a federal breach of warranty claim on behalf of (1) themselves, (2) a national class of all consumers who have ever owned or leased a Class Vehicle, and (3) subclasses of consumers who have ever owned or leased a Class Vehicle in the states where the named Plaintiffs reside or purchased their Class Vehicles. (Second Am. Compl. ¶ 411.) The Defendants move to dismiss a number of these claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In particular, the Defendants contend that the new Plaintiffs' breach of express warranty, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, and unjust enrichment claims fail because the Court already dismissed these claims as to the original Plaintiffs. The Defendants also argue that no Plaintiff has standing to bring any claims on behalf of a national class; some of Plaintiff Hunter's claims are time barred under California law; Plaintiffs Scudder, Acunto, and Hunter fail to allege fraudulent concealment claims; and Plaintiffs Fulmer, Armstrong, Acunto, and Hunter fail to allege state consumer protection act claims.

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). "Because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

T:\ORDERS\19\Callen\mtdtwt2.docx

Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (internal quotation marks, citation, and punctuation omitted). On a facial attack, therefore, "a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion[.]" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid

T:\ORDERS\19\Callen\mtdtwt2.docx

complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

## III.   Discussion

### A. Breach of Express Warranty (Count One), Breach of Implied Warranty (Count Two), Violation of the Magnuson-Moss Warranty Act (Count Four), and Unjust Enrichment (Count Five)

At the outset, the Parties agree that the previously dismissed claims of Plaintiffs Callen, Collier, Finkenauer, and Burton fail for the same reasons set forth in the June 17 Order. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 7–8; Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 5–6.) These include Plaintiffs Callen's, Collier's, Finkenauer's, and Burton's express warranty, implied warranty, Magnuson-Moss Warranty Act, and unjust enrichment claims; Plaintiffs Collier's and Finkenauer's fraudulent concealment claims; and certain of Plaintiffs Callen's, Collier's, and Burton's state consumer protection act claims. *Callen*, 2020 WL 10090879, at *25–26. While the new Plaintiffs also bring express warranty, implied warranty, Magnuson-Moss Warranty Act, and unjust enrichment claims, they concede that "the factual allegations and law" applicable to these claims (except Plaintiff Hunter's unjust enrichment claim) "are substantively the same as for original Plaintiffs." (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 6.) Therefore, the Court grants the motion to dismiss with respect to each of these claims—except Plaintiff Hunter's unjust

5

enrichment claim, which the Court addresses separately below.

The Court dismissed the original Plaintiffs' unjust enrichment claims due to the existence of express warranties between the Parties. *See Callen*, 2020 WL 10090879, at *13. Plaintiff Hunter contends that this holding should not apply to his unjust enrichment claim because, under California law, the Defendants' alleged pre-sale conduct falls outside the scope of the warranties. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 9.) This argument hinges on *In re General Motors LLC CP4 Fuel Pump Litigation*, 393 F. Supp. 3d 871, 881– 82 (N.D. Cal. 2019), which declined to dismiss an unjust enrichment claim based on "GM concealing the fuel pump defect before Plaintiffs purchased their vehicles." However, *In re General Motors* does not disturb the general rule in California that "[u]njust enrichment cannot lie where a valid express contract covering the same subject matter exists between the parties." *Glenn v. Hyundai Motor Am.*, No. SACV 15-2052-DOC (KESx), 2016 WL 7507766, at *5 (C.D. Cal. Nov. 21, 2016) (citation and punctuation omitted) (collecting cases). In the June 17 Order, the Court found that this rule barred the original Plaintiffs' unjust enrichment claims because they involved "the same allegations underlying their breach of express warranty claims." *Callen*, 2020 WL 10090879, at *13. Plaintiff Hunter does not explain why this holding should not extend to his claim, which is identically pleaded in the same count as the others. (Second Am. Compl. ¶¶ 449–56.) Therefore, the Court grants the motion to dismiss with respect to Plaintiff Hunter's unjust enrichment claim.

6

## B. Standing to Represent a National Class

"[I]t is well-settled that prior to the certification of a class . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert." *Id.* at 1280. "Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id.* (quotation marks and citation omitted). Following *Prado*, "named plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises." *Feldman v. BRP US, Inc.*, No. 17-61150, 2018 WL 8300534, at *6 (S.D. Fla. Mar. 28, 2018). Because standing is a threshold issue, courts in this circuit routinely resolve it on a motion to dismiss, rather than waiting for class certification. *See Lewis v. Mercedes-Benz USA, LLC*, 2021 WL 1216897, at *6 (S.D. Fla. Mar. 30, 2021) (collecting cases).

The Defendants urge the Court to apply *Prado* to dismiss all of the Plaintiffs' claims brought on behalf of out-of-state class members: specifically, their express warranty, implied warranty, equitable and injunctive relief, fraud and suppression, and unjust enrichment claims. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 6.) As explained above, the Court has already

7

dismissed the express warranty, implied warranty, and unjust enrichment claims pursuant to the June 17 Order. The fraud and suppression claim, meanwhile, is pleaded only on behalf of state subclasses, so the Court need not address the Plaintiffs' standing to represent a national class on this claim. (Second Am. Compl. ¶ 457.) The only remaining question then is whether any Plaintiff has standing to bring a nationwide claim for equitable and injunctive relief. Plaintiff Fulmer contends that she does because she resides in the same state (Georgia) as the Defendants.[2] (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 4.) The Court disagrees.

Plaintiff Fulmer relies on the purported principle that "[t]he law of a single state is appropriately applied to the claims of all class members if that state is the defendant's headquarters or principal place of business." (*Id.*) Even if this principle were valid, none of her cited authorities addresses Article III standing, so the Court instead follows the on-point and in-circuit *Prado* decision. (*See id.*) Though styled as a separate cause of action, Plaintiff Fulmer's equitable and injunctive relief claim is really "a remedy potentially available only after . . . showing that some independent legal right is being

---

[2] On this same basis, Plaintiff Fulmer also argues that she has standing to bring her fraud and suppression, Georgia Fair Business Practices Act ("GFBPA"), and Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") claims on behalf of a national class. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 4.) However, because she has pleaded these claims only on behalf of herself and the Georgia subclass, the Court rejects her post hoc attempt to expand their geographic reach. (Second Am. Compl. ¶¶ 457, 597, 615.)

infringed[.]" *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004). In other words, there must be an underlying claim on which to base her request for equitable and injunctive relief. *See Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1289 (M.D. Fla. 2009). But Plaintiff Fulmer "does not claim a legal injury in any state other than [Georgia], nor does [s]he allege an injury that arises under the laws of any other state." *Feldman*, 2018 WL 8300534, at *6. It follows then that she cannot seek equitable and injunctive relief individually—or on behalf of class members—under the laws of any other state. *See Lewis*, 2021 WL 1216897, at *7 (residents of four states lacked standing to bring a nationwide unjust enrichment claim since it "is, in reality, fifty . . . claims—one for each state"). Therefore, the Court grants the motion to dismiss with respect to the Plaintiffs' nationwide claim for equitable and injunctive relief.[3]

### C. Plaintiff Hunter's Claims for Fraud and Suppression (Count Six) and Violation of California Unfair Competition Law (Count Nineteen), California False Advertising Law (Count Twenty), and California Consumers Legal Remedies Act (Count Twenty-One)

The Defendants argue that Plaintiff Hunter's fraud and suppression and California consumer protection act claims are barred under the applicable three- and four-year statutes of limitations.[4]  (Defs.' Br. in Supp. of Defs.' Mot.

---

[3] Under this holding, the Plaintiffs may still pursue equitable and injunctive relief individually and on behalf of state subclasses.

[4] Under California law, there is a four-year statute of limitations to bring Unfair Competition Law ("UCL") claims and a three-year statute of limitations to bring fraud, Consumers Legal Remedies Act ("CLRA"), and False

to Dismiss, at 14.) According to the Defendants, these limitations periods began to run when Plaintiff Hunter first noticed fading and cloudiness to his vehicle's wood trim in late-2016, and his lawsuit filed more than four years later in March 2021 is thus untimely. (*Id.* at 14–15.) Plaintiff Hunter does not contest the relevance of these statutes of limitations but rather invokes the discovery rule, which "postpones accrual of a claim until the plaintiff discovers, or has reason to discover, the cause of action." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quotation marks and citation omitted). In Plaintiff Hunter's view, he did not discover the purported defect until mid-2018 at the earliest, when he realized that polish alone would not correct the faded, cloudy finish of his trim. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 7–8.) If valid, this date would put his claims within even the shorter three-year limitations period.

"Under the discovery rule, a plaintiff seeking to avoid the statute of limitations must plead with particularity facts showing the plaintiff's inability to have made earlier discovery despite reasonable diligence." *James*, 2019 WL 2304157, at *12 (quotation marks and citation omitted). A special standard applies to cases of fraudulent concealment:

> In these cases, the plaintiff must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it

---

Advertising Law ("FAL") claims. *See James v. j2 Cloud Servs.*, No. 2:16-cv-05769-CAS(PJWx), 2019 WL 2304157, at *11 (C.D. Cal. May 29, 2019); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010).

T:\ORDERS\19\Callen\mtdtwt2.docx

> or had no actual or presumptive knowledge of facts sufficient to put him on inquiry. A plaintiff must affirmatively excuse his failure to discover the fraud within three years by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.

*Clemens*, 534 F.3d at 1024 (quotation marks and citations omitted). "[O]nce properly pleaded, belated discovery is a question of fact"; however, "whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1320 (2007) (quotation marks and citations omitted).

The Court finds that Plaintiff Hunter has pleaded specific facts that could support more than one legitimate inference about when he discovered the trim defect. According to the Second Amended Complaint, Plaintiff Hunter "first noticed . . . some slight fading and cloudiness to the [trim]" in late-2016 but "assumed this [trim] was due to be polished" (Second Am. Compl. ¶ 267); he has no "expertise or special skill in automobile interior trim or manufacturing of the same" (*id.* ¶ 264); he "generally . . . does not drive his car during daylight hours, such that he was able to see the trim in clear sunlight" (*id.* ¶ 268); he "began to suspect that the [trim] needed more than polishing and had greater problems sometime in mid-2018" (*id.* ¶ 270); and "in early November 2019, [he] realized the [trim] was prematurely fading, and growing cloudy." (*Id.* ¶ 270.) Taken together, these allegations raise fact questions as to when Plaintiff Hunter discovered the trim defect and whether he had

T:\ORDERS\19\Callen\mtdtwt2.docx

knowledge sufficient to put him on inquiry sooner. *See Clemens*, 534 F.3d at 1024. Therefore, the Court denies the motion to dismiss with respect to the timeliness of Plaintiff Hunter's fraud and suppression, UCL, FAL, and CLRA claims.

### D. Fraud and Suppression (Count Six)

Though styled as a single fraud and suppression claim, the new Plaintiffs bring "intertwined but distinct claims for fraudulent misrepresentation and fraudulent concealment in Count Six" of the Second Amended Complaint. *Callen*, 2020 WL 10090879, at *15. (Second Am. Compl. ¶¶ 457–71.) The Defendants move to dismiss only the fraudulent concealment claim and only as to Plaintiffs Scudder, Acunto, and Hunter on the grounds that (1) Plaintiffs Scudder and Acunto fail to allege facts showing a duty to disclose; (2) Plaintiff Hunter fails to allege facts showing the alleged trim defect presents an unreasonable safety hazard or affects the central function of his vehicle; and (3) the economic loss doctrine bars Plaintiffs Hunter's and Scudder's claims. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 18; Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 14 n.7.) The Court considers each of these arguments in turn.

#### 1. Failure to Allege a Duty to Disclose

The Defendants argue that Plaintiffs Scudder's and Acunto's fraudulent concealment claims fail because they do not allege a relationship with the Defendants that could create a duty to disclose. In Plaintiffs Scudder and

Acunto's view, such a duty arises here based on the Defendants' (1) active concealment of the purported trim defect or (2) partial representations about the wood trim without providing the entire truth. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 24–25, 28–30.) However, Plaintiffs Scudder and Acunto purchased their vehicles from a private seller and a third-party dealership, respectively (Second Am. Compl. ¶¶ 178, 318), and the Defendants insist that they could not have concealed or represented any information in those transactions. (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 15, 17.) The Court agrees with the Defendants, consistent with its prior ruling on this issue, and thus grants the motion to dismiss with respect to Plaintiff Scudder's and Acunto's fraudulent concealment claims.[5] *See Callen*, 2020 WL 10090879, at *18 ("Plaintiffs Finkenauer and Collier, who allege that they purchased their Class Vehicles from a private seller and an Audi dealership, respectively, have

---

[5] Specifically, a claim of active concealment or partial disclosure must be premised on "some conduct on the part of *the seller* or *the seller's agent*" in an arm's-length transaction. *Jablonski v. Rapalje*, 788 N.Y.S. 2d 158, 160 (N.Y. App. Div. 2005) (emphasis added); *see also Friedman v. Am. Guardian Warranty Services, Inc.*, 837 So.2d 1165, 1166 (Fla. Dist. Ct. App. 2003) ("Where *a party in an arm's-length transaction* undertakes to disclose information, all material facts must be disclosed." (emphasis added)). Plaintiff Scudder and Plaintiff Acunto cannot make this threshold showing because neither entered into a transaction with the Defendants or the Defendants' agent. For the same reason, Plaintiff Acunto also has not pleaded a "special relationship" with the Defendants under New York law sufficient to create a duty to disclose. *See Wey v. New York Stock Exchange, Inc.*, No. 602510/05, 2007 WL 1238596, at *6 (N.Y. App. Div. Apr. 10, 2007) (describing a "special relationship" as "actual privity of contract between the parties or a relationship so close as to approach that of privity"). (*Contra* Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 30.)

failed to allege that they engaged in any negotiations with the Defendants that could give rise to liability for fraudulent concealment or omission.").

### 2.  Failure to Allege an Actionable Defect

The Defendants argue that Plaintiff Hunter's fraudulent concealment claim fails because he has not alleged that the trim defect presents an unreasonable safety hazard or affects the central function of his vehicle. Plaintiff Hunter fails to respond to this argument in opposition to the motion to dismiss; rather, he addresses only whether a safety hazard or central functionality requirement applies to his UCL and CLRA claims. (*See* Pls.' Br. in Opp'n to Defs.' Mot to Dismiss, at 36–40.) Therefore, the Court deems Plaintiff Hunter's fraudulent concealment claim abandoned and grants the motion to dismiss thereon. *See Kramer v. Gwinnett Cnty.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (affirming lower court ruling that a failure to respond to a defendant's summary judgment arguments against a claim indicates the claim is abandoned).

### 3.  Economic Loss Doctrine

The Defendants argue that the economic loss doctrine bars Plaintiffs Hunter's and Scudder's fraudulent concealment claims. Because the Court has already dismissed their claims on separate grounds, the Court does not consider this argument.

T:\ORDERS\19\Callen\mtdtwt2.docx

### E. Violations of State Consumer Protection Statutes

The new Plaintiffs bring claims for violations of consumer protection statutes in the states where they reside and where they purchased their vehicles. (Second Am. Compl. ¶¶ 584–749). The Defendants seek dismissal of five of these claims, as discussed below. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 22–25.)

#### 1. Violation of GUDTPA (Count Sixteen)

Plaintiff Fulmer brings a claim under the GUDTPA, which prohibits "deceptive trade practice[s]" such as "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another"; "[r]epresent[ing] that goods or services have . . . characteristics . . . uses, benefits, or quantities that they do not have"; "[a]dvertis[ing] goods or services with intent not to sell them as advertised"; and "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." O.C.G.A. § 10-1-372(a). "The [G]UDTPA offers only injunctive relief where the plaintiff has established a likelihood of future damage, but it does not address past harm." *Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 779 (2020). According to the Defendants, Plaintiff Fulmer's GUDTPA claim fails because she cannot show the requisite likelihood of future injury. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 22.) Plaintiff Fulmer responds that she has pleaded ongoing and future harm, where the Defendants deny the trim defect and charge for replacement trim that is as

defective as the original. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 33.)

The Court agrees with the Defendants. Plaintiff Fulmer has not alleged that she intends to purchase a Class Vehicle in the future or that she ever has paid, or intends to pay, to replace her trim. Instead, she complains only that the Defendants have "refused to repair or replace the interior wood trim of [her] vehicle" and that their response to her warranty claim was "unsatisfactory." (Second Am. Compl. ¶¶ 213, 215, 219.) Because Plaintiff Fulmer has already suffered these harms, they cannot support a claim for injunctive relief under the GUDTPA. *See, e.g.*, *Buske v. Owens Corning (Corp.)*, No. 1:16-CV-709-TWT, 2017 WL 1062371, at *3 (N.D. Ga. Mar. 21, 2017) (dismissing a GUDTPA claim based on nearly identical allegations of harm). Nor does *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277 (N.D. Ga. 2018), help her case. The plaintiffs in *Amin* attested that "they must periodically take their vehicles for service regarding the [HVAC] defect and that Mercedes (1) denies the existence of the defect and (2) charges Plaintiffs for non-permanent solutions." *Id.* at 1294. These allegations, the court found, "concern both ongoing and future harm of the type contemplated by [the GUDTPA]." *Id.* at 1295. By contrast, even if Plaintiff Fulmer is correct that the Defendants' replacement trim is defective, there is no indication that she plans to install it in her vehicle at her own expense.[6] Therefore, the Court grants the

---

[6] The Second Amended Complaint generally states that "replacement [trim] fades, discolors, and becomes cloudy just like the original trim" and that

16

motion to dismiss with respect to Plaintiff Fulmer's GUDTPA claim.

### 2. Violation of Missouri Merchandising Practices Act (Count Eighteen)

Plaintiff Armstrong brings a claim under the Missouri Merchandising Practices Act ("MMPA"), which prohibits "[t]he act, use or employment by any person of any deception, fraud . . . misrepresentation . . . or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri[.]" MO. REV. STAT. § 407.020.1. The Eighth Circuit has explained that, "although the MMPA covers every kind of unfair practice, a plaintiff's claim nevertheless must involve commerce in or from the state of Missouri." *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 403 (8th Cir. 2019) (quotation marks and citations omitted). The Defendants argue that this is where Plaintiff Armstrong's MMPA claim falls short: Because she purchased her vehicle from a dealership in Texas, she cannot allege a violation of the MMPA even though she is a Missouri resident. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 24.)

The Court agrees with the Defendants. Georgia federal courts sitting in diversity follow the *lex loci delicti* rule to determine what state's law governs a claim sounding in tort. *See Mgmt. Sci. Am., Inc. v. NCR Corp.*, 765 F. Supp. 738, 739 (N.D. Ga. 1991). Under this rule, "the law of the place where the injury

---

the Defendants "forc[e] Class members to bear the cost of replacing the [trim][.]" (*Id.* ¶¶ 371, 383.) However, neither of these allegations specifically applies to Plaintiff Fulmer and her injuries.

17

occurred . . . determines the substantive rights of the parties. The law of the place where the injury occurred has alternatively been referred to by Georgia courts as the place where there takes place the last event necessary to make an actor liable for an alleged tort." *Id.* (quotation marks, citations, and punctuation omitted). While Plaintiff Armstrong alleges that she viewed misleading advertisements in Missouri prior to her purchase, the economic injury that gave rise to her MMPA claim occurred when she purchased her vehicle in Texas. *See Callen*, 2020 WL 10090879, at *20, 23 (applying the laws of the states where the original Plaintiffs purchased their vehicles, not where they presently reside). Therefore, the Court grants the motion to dismiss with respect to Plaintiff Armstrong's MMPA claim.

### 3. Violation of New York General Business Law § 349 (Count Twenty-Four)

Plaintiff Acunto brings a claim under New York General Business Law ("NYGBL") § 349, which makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" N.Y. GEN. BUS. LAW § 349(a). To maintain a cause of action under this statute, "a plaintiff must allege deceptive acts or practices which took place in New York State." *Goshen v. Mut. Life Ins. Co.*, 286 A.D.2d 229, 230 (N.Y. App. Div. 2001). The Defendants argue that Plaintiff Acunto cannot satisfy this element because he purchased his vehicle from a dealership in Tennessee, not New York. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 24.)

T:\ORDERS\19\Callen\mtdtwt2.docx

Plaintiff Acunto counters that the physical location of the dealership is immaterial since he made the purchase online from New York. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 35.)

The Court agrees with Plaintiff Acunto. In *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382 (S.D.N.Y. 2010), the court considered a similar question: whether plaintiffs who booked and paid for New York hotel rooms online from other states could maintain a NYGBL claim alleging undisclosed taxes and fees. The court found against the plaintiffs, holding that "[t]he alleged deceptive practice—the failure to disclose the mark-up, retention of the Tax Delta, and the bundling of the service fees and taxes in the invoice—occurred at the time the hotel reservations were made on the websites; they did not occur when Plaintiffs checked in to the hotels." *Id.* at 403. The same rationale applies to Plaintiff Acunto's purchase of a vehicle on the Internet from New York.[7] His economic loss occurred at the time he completed the transaction online, not when he picked up the vehicle or had it delivered from the dealership in Tennessee. Therefore, the Court denies the motion to dismiss with respect to Plaintiff Acunto's NYGBL § 349 claim.

---

[7] The Defendants contend that Plaintiff Acunto "never alleges that he was a New York resident at the time of purchase" (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 24); however, the Second Amended Complaint lists New York as Plaintiff Acunto's only residence at all operative times. (Second Am. Compl. ¶ 29.)

### 4.  Violation of UCL (Count Nineteen) and CLRA (Count Twenty-One)

Plaintiff Hunter brings claims under the UCL and CLRA. The UCL prohibits "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising[.]" CAL. BUS. & PROF. CODE § 17200. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" CAL. CIV. CODE § 1770(a). To state a claim under the CLRA, a plaintiff may allege either an affirmative misrepresentation or an omission of material fact by the defendant. *See Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1032 (N.D. Cal. 2014). Meanwhile, the UCL creates separate causes of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 984 (N.D. Cal. 2016). Because the UCL and CLRA employ the same standard for fraudulent activity, the Court analyzes the two statutes together. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017).

According to the Defendants, Plaintiff Hunter has not adequately pleaded UCL and CLRA claims because there is no duty to disclose a defect that does not present an unreasonable safety hazard or affect the central function of the product. However, a duty to disclose is relevant only to an omission theory of liability, and Plaintiff Hunter contends that he "alleges

numerous [*affirmative*] *misrepresentations* and reliance on them." (Pls.' Br. in Supp. of Defs.' Mot. to Dismiss, at 37 (emphasis added).) The Court agrees with Plaintiff Hunter. He alleges that (1) the Defendants certified his vehicle's wood trim as "OK – Passed" prior to purchase; (2) the Vehicle Care Guide represented that "every visible surface has been crafted with the finest materials and coatings to ensure the best appearance and durability"; and (3) the New Vehicle Limited Warranty ("NVLW") covered "any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period." (Second Am. Compl. ¶¶ 266, 278, 332, 671–72, 697.) As the Court previously held, these allegations are sufficiently detailed to support an affirmative misrepresentation claim. *See Callen*, 2020 WL 10090879, at *17–18.

The Court's work is not finished, though, because Plaintiff Hunter also alleges that the Defendants have committed fraudulent omissions under the UCL and CLRA. (Second Am. Compl. ¶¶ 671–72; 697.) These omissions are actionable only if the Defendants had a duty to disclose the trim defect before he purchased the vehicle. In general, such a duty may arise under four circumstances, known as the *LiMandri* factors:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997). A fact is deemed "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[.]" *Engalla v. Permanent Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997) (quotation marks and citation omitted). However, the Ninth Circuit has narrowed this definition where a product defect arises outside the warranty period; in those cases, a plaintiff must show that the defect poses safety concerns or affects the product's central function. *See Harris v. LSP Prods. Grp.*, No. 2:18-cv-02973-TLN-KJN, 2021 WL 2682045, at *11 (E.D. Cal. 2021).[8]

Plaintiff Hunter urges the Court to evaluate his claims under the *LiMandri* factors without applying the safety hazard and central functionality tests. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 39.) He cites *In re Toyota RAV4 Hybrid Fuel Tank Litigation*, No. 20-cv-00337-EMC, 2021 WL 1338949 (N.D. Cal. Apr. 16, 2021) for support, which held that "the [Ninth Circuit] tests, on the one hand, and the *LiMandri* test, on the other, represent *alternative* means of pleading a pure-omission claim." 2021 WL 1338949, at *20 (emphasis

---

[8] In *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861–62 (9th Cir. 2018), the Ninth Circuit first embraced the central functionality test while also questioning the continued vitality of the safety hazard test in light of intervening California Courts of Appeal decisions. Ultimately, the court concluded that "[t]he recent California cases show that [the] safety hazard pleading requirement is not necessary in *all* omission cases, but that the requirements may remain applicable in some circumstances": for example, when a product defect does not affect its central function but still creates a safety hazard. *Id.* at 864 (emphasis in original).

in original). But this holding conflicts with recent California Courts of Appeal pronouncements that the safety hazard test is "merely 'a specific application of the duty to disclose' when one of the *LiMandri* factors are met," and not an "additional, '*independent* duty of disclosure[.]'" *Nalick v. Seagate Technology LLC*, No. A158237, 2021 WL 1135226, at *9 (Cal. Ct. App. Mar. 25, 2021) (emphasis in original) (quoting *Gutierrez v. Carmax Auto Superstores Cal.*, 248 Cal. Rptr. 3d 61, 84 (Cal. Ct. App. 2018)). Further, the Court's research has turned up no decisions aligning with *In re Toyota* on this issue. *See, e.g.*, *Harris*, 2021 WL 2682045, at *11 (requiring a safety hazard or an effect on the product's central function as part of the *LiMandri* factors); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 459 (N.D. Cal. 2018) (same). The Court thus declines to follow *In re Toyota* regarding the appropriate pleading standard for omission claims under the UCL and CLRA.

There is another reason why the safety hazard and central functionality tests may not apply in this case. As stated above, these tests are triggered when "a latent defect . . . creates a likelihood of the product failing *outside the warranty period*[.]" *Harris*, 2021 WL 2682045, at *11 (emphasis added). Conversely, "a manufacturer has a duty to disclose any defects that fall *within the warranty period*, whether relating to safety or to costly repairs, that would have caused the consumer to not purchase the product if they had been disclosed." *Taleshpour v. Apple Inc.*, No. 5:20-cv-03122-EJD, 2021 WL 3037703, at *6 (N.D. Cal. July 19, 2021) (emphasis added) (quotation marks,

T:\ORDERS\19\Callen\mtdtwt2.docx

citation, and punctuation omitted) (collecting cases); *see also Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 595 (Cal. Ct. App. 2011) (plaintiffs were not required to allege a safety hazard in their CLRA claim where the computer defect arose "during and before the warranty expired"). The Ninth Circuit explained that, in cases where a product's warranty has expired:

> to broaden the duty to disclose beyond safety concerns would eliminate term limits on warranties, effectively making them perpetual or at least for the useful life of the product. Under a contrary rule . . . the failure of a product to last forever would become a defect, a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself.

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141–42 (9th Cir. 2012) (quotation marks, citations, and punction omitted); *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1029 (9th Cir. 2017) (expressing "concerns about the use of consumer fraud statutes to impermissibly extend a product's warranty period").

Turning to the instant case, the Court finds that Plaintiff Hunter's factual allegations are insufficient to support a reasonable inference that his vehicle's trim defect manifested during the warranty period. Plaintiff Hunter purchased his 2014 vehicle with 13,609 miles and states that he "first noticed . . . some slight fading and cloudiness" to the wood trim in late-2016. (Second Am. Compl. ¶¶ 256–57, 267.) However, he does not disclose the number of miles on his vehicle when the trim defect allegedly appeared; this is an essential detail since the NVLW expires after "the first 48 months or 50,000 miles,

*whichever [comes] first*[.]" (*Id.* ¶ 68 (emphasis added).) It is impossible to glean from Plaintiff Hunter's allegations whether the NVLW was in effect when the trim defect presented itself,[9] so he must instead allege that the defect creates a safety hazard or affects the central function of his vehicle to state omission claims under the UCL and CLRA. Because he fails to do so (nor could he plausibly do so), the Court grants the motion to dismiss thereon.

## IV.   Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 61] is GRANTED in part and DENIED in part. The motion is GRANTED with respect to the following claims, which are dismissed:

- Breach of Express Warranty (Count One)

- Breach of Implied Warranty (Count Two)

- Equitable and Injunctive Relief (Count Three) as to the Plaintiffs' allegations on behalf of a putative national class

- Violation of the Magnuson-Moss Warranty Act (Count Four)

- Unjust Enrichment (Count Five)

- Fraud and Suppression (Count Six) as to (1) Plaintiff Finkenauer's fraudulent concealment claim, (2) Plaintiff Collier's fraudulent

---

[9] While Plaintiff Hunter alleges that his vehicle "is still under the [certified pre-owned] warranty and within the warranty period" (Second Am. Compl. ¶ 257), the Court previously held that this warranty excludes interior trim from its coverage. *See Callen*, 2020 WL 10090879, at *9. Therefore, to avoid the safety hazard and central functionality tests, he must be able to show that the trim defect appeared during the NVLW.

T:\ORDERS\19\Callen\mtdtwt2.docx

concealment claim, (3) Plaintiff Scudder's fraudulent concealment claim, (4) Plaintiff Acunto's fraudulent concealment claim, and (5) Plaintiff Hunter's fraudulent concealment claim

- Violation of South Carolina Unfair Trade Practices Act (Count Seven)

- Violation of Ohio Consumer Sales Practices Act (Count Nine) as to Plaintiff Burton's class action allegations

- Violation of Oregon Unlawful Trade Practices Act (Count Ten)

- Violation of New Jersey Consumer Fraud Act (Count Twelve)

- Violation of Georgia Uniform Deceptive Trade Practices Act (Count Sixteen)

- Violation of Missouri Merchandising Practices Act (Count Eighteen)

- Violation of California Unfair Competition Law (Count Nineteen) as to Plaintiff Hunter's omission claim

- Violation of California Consumers Legal Remedies Act (Count Twenty-One) as to Plaintiff Hunter's omission claim

The motion is DENIED with respect to the following claims:

- Violation of California Unfair Competition Law (Count Nineteen) as to Plaintiff Hunter's affirmative misrepresentation claim

- Violation of California False Advertising Law (Count Twenty)

- Violation of California Consumers Legal Remedies Act (Count Twenty-One) as to Plaintiff Hunter's affirmative misrepresentation

26

T:\ORDERS\19\Callen\mtdtwt2.docx

claim

- Violation of New York General Business Law § 349 (Count Twenty-
  Four)

SO ORDERED, this 4 day of October, 2021.


         /s/Thomas W. Thrash
         THOMAS W. THRASH, JR.
         United States District Judge

T:\ORDERS\19\Callen\mtdtwt2.docx