**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TERI CALLEN, et al. on behalf of themselves and all others similarly situated,<br>     *Plaintiffs*,<br><br>v.<br><br>DAIMLER AG and MERCEDES-BENZ USA, LLC,<br><br><br>     *Defendants*. | CASE NO. 1:19-cv-01411-TWT<br><br><br>**Judge Thomas W. Thrash, Jr.** |

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT AGREEMENT AND
PRELIMINARY CERTIFICATION OF NATIONWIDE SETTLEMENT
CLASS AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
    CLASS ACTION SETTLEMENT AGREEMENT AND PRELIMINARY
    CERTIFICATION OF NATIONWIDE SETTLEMENT ............................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................4

I.     BACKGROUND AND PROCEDURAL HISTORY ....................................6

II.    SUMMARY OF SETTLEMENT TERMS ...................................................14

    A. THE SETTLEMENT CLASS DEFINITION ......................................14

    B. SETTLEMENT CLASS MEMBER BENEFITS .................................14

       1. Reimbursement for Qualified Past Repairs. .........................16

       2. Reimbursement for Qualified Future Repairs. ....................17

       3. The Claims Process Is Simple. ............................................19

III.   LAW AND ARGUMENT ...........................................................................21

    A. PRELIMINARY APPROVAL IN THE ELEVENTH CIRCUIT .............................23

    B. THE SETTLEMENT MERITS APPROVAL .......................................25

       1. The Settlement Was The Result Of A Thorough, Informed, Fair
         Negotiation Process. ..........................................................27

       2. The Settlement Provides Significant Benefits In Exchange For The
         Compromise Of Strong Claims. .........................................29

           *a. The Settlement Mitigates the Risks, Expenses, and Delays of
             Continued Litigation.* .................................................31

           *b. The Claims Process Is Straightforward.* ....................32

           *c. Counsel Will Seek Reasonable Fees and Costs.* .........33

       3. The Settlement Treats Class Members Equitably. ...............34

       4. There Are No Undisclosed Side Agreements. .....................37

       5. The *Bennett* Factors Support Preliminary Approval. .........37

           *a. The Benefits of Settlement Outweigh the Risks at Trial.* ..............38

b. *The Settlement Is Within the Range of Possible Recoveries and Is Fair, Adequate, and Reasonable.* ................................................. 38

c. *Continued Litigation Would Be Expensive and Lengthy.* ........... 40

d. *The Degree of Opposition to the Settlement.* ........................... 40

e. *The Stage of Proceedings.* ............................................. 41

C. THE COURT WILL BE ABLE TO CERTIFY THE SETTLEMENT CLASS ......... 42

1. The Class Satisfies Rule 23(a). ......................................... 43

a. *The Class Is Sufficiently Numerous.* .......................... 43

b. *Common Questions of Law and Fact Exist.* ................. 43

c. *The Class Representatives' Claims Are Typical.* ........... 45

d. *The Class Representatives and Class Counsel Are Adequate.* ... 46

2. The Class Satisfies Rule 23(b)(3). ..................................... 47

a. *Common Issues of Law and Fact Predominate.* ........... 47

b. *Class Treatment Is Superior.* ................................... 48

D. THE PROPOSED CLASS NOTICE IS THE BEST PRACTICABLE .................... 50

E. THE PROPOSED SCHEDULE FOR NOTICE AND APPROVAL ....................... 51

IV.   THE COURT SHOULD PRELIMINARILY ENJOIN PARALLEL PROCEEDINGS. .......................................................... 52

V.   CONCLUSION ................................................................ 55

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276 (11th Cir. 2007) ..............52

*Adams v. Sentinel Offender Servs., LLC,* No. 1:17-cv-2813-WSD, 2018 U.S. Dist. LEXIS 78841 (N.D. Ga. May 10, 2018)...........................................................39

*Alin v. Honda Motor Co., Ltd.*, 2012 WL 8751045 (D. N.J. Apr. 13, 2012) ..........36

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).....................................43, 50

*Babineau v. Fed. Express Corp.,* 576 F.3d 1183 (11th Cir. 2009) .........................49

Beaty v. Contl. Auto. Sys. U.S., Inc., CV-10-S-2440-NE, 2012 WL 12895014 (N.D. Ala. Feb. 6, 2012) ......................................................................................40

Behrens v. Wometco Enters., Inc., 118 F.R.D. 534 (S.D. Fla. 1988).....................40

Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984) ................... 24, 26, 39, 40

Burrows v. Purchasing *Power, LLC*, No. 1:12-cv-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ..................................................................................... 39, 40

Camp v. City of Pelham, 2:10-CV-01270-MHH, 2014 WL 1764919 (N.D. Ala. May 1, 2014)..................................................................................................... 39, 40

Carnegie v. Mut. Sav. Life Ins. Co., Civ-99-S-3292-NE, 2004 WL 3715446 (N.D. Ala. Nov. 23, 2004).............................................................................................24

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ..............................49

*China Agritech, Inc. v. Resh*, 584 U.S. __, 138 S.Ct. 1800, 201 L.Ed.2d 123 (2018) ..............................................................................................................................37

Columbus Drywall & Insulation, Inc. v. Masco Corp., 258 F.R.D. 545 (N.D. Ga. 2007) ...................................................................................................... 42, 43

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ...........................44

*David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ..31

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011).......................27

*Feller v. Transamerica Life Ins. Co.,* No. 16-cv-01378 CAS (GJSx)*,* 2018 U.S. Dist. LEXIS 196062 (C.D. Cal. Nov. 16, 2018).................................................57

Fresco v. Auto Data Direct, Inc., 2007 WL 2330895 (S.D. Fla. May 11, 2007) ...23, 24

*George v. Academy Mort'g Corp. (UT)*, 369 F.Supp.3d 1356 (N.D. Ga. 2019).....33

*Grogan v. Aaron's Inc.,* No. 1:18-cv-02821-JPB, Slip Op. (N.D. Ga. May 1, 2020) ..............................................................................................................................57

*Hawkins v. JPMorgan Chase Bank, N.A.*, 2020 U.S. Dist. LEXIS 213064 (M.D. Fla. Nov. 15, 2020) .............................................................................................38

iv

Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F.Supp. 825 (E.D. N.C. 1994) ..................................................................................................25

*In re: Am. Online Spin-Off Accounts Litig.*, No. CV 03-6971-RSWL, 2005 U.S. Dist. LEXIS 45625 (C.D. Cal. May 9, 2005) .........................................................54

*In re: Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985)..............................54, 55

*In re: Bridgestone/Firestone, Tires Prods. Liab. Litig.*, 333 F.3d 763 (7th Cir. 2003) ................................................................................................54

In re: Bromine Antitrust Litig, 203 F.R.D. 403 (S.D. Ind. 2001)...........................25

*In re: Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011) .. 26, 28, 30

*In re: Checking Account Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015) ... 45, 49

*In re: Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220 (3d Cir. 2002) ......................55

*In re: Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020).......................................................................26

*In re: Joint E. & S, Dist. Asbestos Litig.*, 134 F.R.D. 32 (E.D.N.Y. & S.D.N.Y. 1990) ................................................................................................55

*In re: Mexico Money Transfer Litig.*, 98 C 2407, 98 C 2408, 1999 U.S. Dist. LEXIS 17268 (N.D. Ill. Oct. 13, 1999) ................................................57

*In re: Motorsports Merchandise Antitrust Litig.*, 112 F.Supp.2d 1329 (N.D. Ga. 2000) ................................................................................................39

*In re: Progressive Ins. Corp. Underwriting & Rating Practices Litig.*, 2008 WL 11348505 (N.D. Fla. Oct. 1, 2008) ...............................................35

*In re: Tri-State Crematory Litig.*, 215 F.R.D. 660 (N.D. Ga. 2003) ......................46

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)...........................35

*ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978) ..........................54

*Johnson v. NPAS Solutions, Inc*, 975 F.3d 1244 (11th Cir. 2020) ........................37

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) .........................................50

Lipuma v. Am. Express Co., 406 F.Supp.2d 1298, (S.D. Fla. 2005) ......... 40, 41, 42

Mashburn v. Nat'l Healthcare, Inc., 684 F.Supp. 660 (M.D. Ala. 1988) ...............42

*Melanie K. v. Horton*, 2015 WL 1308368 (N.D. Ga. Mar. 23, 2015) ....................45

*Metzler v. Med. Mgmt. Int'l*, 2020 U.S. Dist. LEXIS 187478 (M.D. Fla. Oct. 9, 2020) ................................................................................................38

*Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301 (S.D. Fla. 2017).....................51

*Monroe Cnty. Empls.' Ret. Sys. v. S. Co.*, 2019 WL 3956139 (N.D. Ga. Aug. 22, 2019) ................................................................................................51

*Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002) ...........................................56

Parsons v. Brighthouse Networks, LLC, 2:09-CV-267-AKK, 2015 WL 13629647 (N.D. Ala. Feb. 5, 2015) ................................................ 27, 39, 41, 42

*Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675 (S.D. Fla. 2009) .......................................46

*Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948 (C.D. Cal. Sep. 25, 2013) ..................................................................................................................36

*Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015) .......... 44, 47

*Turner v. Gen. Elec. Co.*, 2006 WL 2620275 (M.D. Fla. Sep. 13, 2006) ..............31

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. __, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016) ..................................................................................................................49

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977)..............................................55

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)............................................46

Williams v. First Nat'l Bank of Pauls Valley, 216 U.S. 582 (1910) ......................24

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009) .......................45

*Williams v. Wells Fargo Bank*, 280 F.R.D. 665 (S.D. Fla. 2012) ..........................46

*Wilson v. EverBank*, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ...........................30

## Statutes

28 U.S.C. § 1651(a) ................................................................54

## Rules

Fed. R. Civ. P. 23(a)(1) ..........................................................44
Fed. R. Civ. P. 23(a)(3) .................................................... 46, 47
Fed. R. Civ. P. 23(a)(4) ..........................................................47
Fed. R. Civ. P. 23(b)(3) ............................................... 48, 50, 51
Fed. R. Civ. P. 23(e) ...............................................................23
Fed. R. Civ. P. 23(e)(1) ................................................... 28, 51
Fed. R. Civ. P. 23(e)(2) ................................................... 26, 28
Fed. R. Civ. P. 23(e)(2)(A) .....................................................29
Fed. R. Civ. P. 23(e)(2)(B) .....................................................29
Fed. R. Civ. P. 23(e)(2)(C) .....................................................30
Fed. R. Civ. P. 23(e)(2)(D) .............................................. 31, 36
Fed. R. Civ. P. 23(e)(3) ..........................................................38
Fed. R. Civ. P. 23(g) ..............................................................47
Fed. R. Civ. P. 23(g)(1)(A) .....................................................48

## Other Authorities

3B J.W. Moore, *MOORE'S FEDERAL PRACTICE* (2d ed. 1996), ¶ 23.80[2.-1]............25
4 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2015) ...............23
*MANUAL FOR COMPLEX LITIG.,* § 21.632 (4th ed. 2004).................................... 23, 24

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AGREEMENT AND PRELIMINARY CERTIFICATION OF NATIONWIDE SETTLEMENT

Plaintiffs Teri Callen, Steve Burton, Paul Finkenauer, Lorne Collier, Jose Figueroa, Glenn Scudder, Ann Fulmer, Rudi Rosenfeld, Taryn Armstrong, Sean Hunter, Richard Hall, Angelo Farrow and Larry Acunto (collectively, "*Callen* Plaintiffs"), individually and on behalf of the proposed nationwide Settlement Class as defined in the executed proposed Class Action Settlement Agreement and Release, attached as <u>Exhibit 1</u> (the "Settlement Agreement," "Settlement," "Proposed Settlement Agreement," or "PSA"), hereby give notice and move the Court for an Order (a) preliminarily approving the proposed Settlement Agreement; (b) preliminarily certifying a nationwide settlement class of all current and former owners and lessees of any 212 E-Class Mercedes-Benz originally equipped with Burl Walnut Trim and purchased or leased in the United States ("Class Members"); (c) directing Notice to the Class Members pursuant to Fed. R. Civ. P. 23(e)(1); (d) appointing Class Counsel for the Class Representatives and Class Members pursuant to Rule 23(g)(3); (e) preliminarily enjoining parallel proceedings[1]; and, (f) scheduling a Final Approval hearing pursuant to Rule 23(e)(2). Any term in this motion that is not specifically defined herein shall take on that meaning ascribed to

---

[1] To date, the Parties are unaware of any other actions asserting similar allegations.

it in the proposed Settlement Agreement. This motion is not opposed by the Defendants, Daimler AG and Mercedes-Benz USA, LLC (collectively, "Defendants").

As shown below, the proposed Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), and the proposed Settlement Agreement is fair, reasonable and adequate. The Parties have negotiated a proposed Settlement that offers monetary reimbursement for Qualified Past Repairs and extended warranty coverage for Qualified Future Repairs and that provides direct benefits to current and former owners and lessees of over 243,000 Subject Vehicles sold and/or leased in the United States, which likely will include over one hundred thousand individuals.

In short, the *Callen* Plaintiffs allege that the Burl Walnut Trim in 212 E-Class Mercedes-Benz vehicles substantially fades, grows discolored, and becomes cloudy over time (the "Litigation Claims"). Pursuant to the specified terms, including without limitation that Subject Vehicles be, in most cases, fewer than 15 years from their original in-service date, the proposed Settlement provides the proposed Class Members on a sliding scale based on the Subject Vehicle's age (i) reimbursement for past out-of-pocket costs for repair of issues related to the Litigation Claims and (ii) a warranty extension to cover future costs related to the Litigation Claims.

Additionally, the proposed Settlement provides that if any Settlement Class Member prior to final approval of this Settlement either:  (i) presents documentary evidence that he or she presented the Burl Walnut Trim of their Subject Vehicle to an Authorized Service Center for repair or replacement or provided written notice to MBUSA under the New Vehicle Limited Warranty but was denied warranty or goodwill coverage for such repair or replacement, and the Settlement Class Member for any reason chose not to repair or replace the Burl Walnut Trim; or (ii) provides to the Settlement Administrator proof of any such alleged Burl Walnut Trim defect, which proof includes a dated photograph of the alleged Burl Walnut Trim defect, then the claim is preserved and payable pursuant to the sliding scale. Further, the proposed Notice Plan, which includes direct mailing of postcard notification and the establishment of a website, fulfills the requirements of both Rule 23 and due process as the best notice practicable under the circumstances.

Accordingly, the *Callen* Plaintiffs hereby respectfully move this Court for a preliminary determination on the fairness, reasonableness, and adequacy of the proposed Settlement and appointment of Lead Counsel so that notice may be given to the preliminary nationwide Settlement Class and a hearing may be scheduled to make a final determination regarding the fairness of the proposed Settlement.  As the proposed Settlement will resolve the claims of all Class Members, the *Callen*

Plaintiffs further move this Court for an Order preliminarily enjoining parallel litigation, pursuant to the All Writs Act which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

## MEMORANDUM OF POINTS AND AUTHORITIES

This Court is familiar with the *Callen* Plaintiffs' allegations in this case (hereinafter referred to as "*Callen*"). The *Callen* Plaintiffs allege a defect in the Burl Walnut Trim in 212 E-Class Mercedes-Benz vehicles in that it substantially fades, grows discolored, and becomes cloudy over time (hereinafter, the "Subject Vehicles"). The *Callen* Plaintiffs allege that as a result of the Litigation Claims, the Class Members either paid out-of-pocket to repair or did not repair the Subject Vehicles because the repairs were not covered under warranty. The *Callen* Plaintiffs contend the Litigation Claims injured all proposed Class Members in the same way, regardless of whether they purchased or leased their Class Vehicles through authorized Mercedes-Benz dealerships or independent automobile dealerships and regardless of whether the Class Vehicles were new or used. The Defendants deny these allegations and would continue to litigate the claims at issue, were it not for the proposed Settlement.

4

The Plaintiffs successfully opposed multiple rounds of dispositive motions, prevailing on the majority of the fraud-based claims, and after traversing those motions and once the discovery process was well underway, the Parties agreed to explore potential early resolution, and the Parties initiated earnest settlement discussions. Having realized the complexity and importance of the potential settlement, the Parties agreed to engage Hunter Hughes to assist the parties in successful mediations, which took place on November 1, 2021, and November 5, 2021. *See* Declaration of William Lewis Garrison, Jr., at ¶¶ 25-27, attached here (the "Garrison Decl.").

Following the first mediation with Mr. Hughes, the Parties reached the proposed nationwide class action settlement ("Settlement") that, in accordance with the requirements and limitations of the Settlement Agreement, reimburses the proposed Class Members for certain past out-of-pocket costs ("Qualified Past Repairs," as defined in the Settlement) and establishes a warranty extension to cover certain future costs ("Qualified Future Repairs" as defined in the Settlement) related to the Litigation Claims. Essentially, the Settlement Agreement extends, pursuant to certain requirements and limitations, a warranty on the Burl Walnut Trim (on a sliding scale) for up to 15 years and unlimited miles after each Class Vehicle was put into service. In the second mediation with Mr. Hughes, the Parties reached a

proposed agreement on Class Counsel's attorneys' fees, litigation costs and expenses, Class Representative incentive fees, and administrative costs, all of which are covered separately under the Settlement and will not reduce any of the benefits to the Class.

## I.    BACKGROUND AND PROCEDURAL HISTORY

This case involves alleged defects in the manufacture, process, materials, and workmanship of the Subject Vehicles, and it includes allegations regarding misleading marketing, advertising, warranting, selling, and servicing of the 212 E-Class Mercedes-Benz Vehicles with Burl Walnut Trim.  The *Callen* Plaintiffs contend that Defendants knowingly concealed that the Burl Walnut Trim on the Subject Vehicles is defective and that this latent defect causes the Symptoms Alleged.  Class Members either paid out-of-pocket to repair the Symptoms Alleged in the Subject Vehicles or, if not covered by warranty, may be required to do so in the future. Defendants deny the *Callen* Plaintiffs' allegations in full and further deny that they acted improperly or are liable for the *Callen* Plaintiffs' alleged damages.

Litigation related to the 212 E-Class Mercedes-Benz Burl Walnut Trim was initiated in this Court with the *Callen* Plaintiffs and has not been litigated elsewhere. A class action complaint, *Callen et al. v. Mercedes-Benz USA, LLC et al.*, was filed by plaintiff Teri Callen against Daimler AG and MBUSA on March 28, 2019, in the

United States District Court for the Northern District of Georgia alleging, on behalf of a putative nationwide class (and a proposed putative state subclass) that the Subject Vehicles contain defective Burl Walnut Trim in that they experience the Symptoms Alleged.

On August 1, 2019, Plaintiffs filed a First Amended Complaint adding plaintiffs Steve Burton, Paul Finkenauer, and Lorne Collier, and additional proposed putative state subclasses and related claims. On October 30, 2019, Defendants filed a motion to dismiss the First Amended Complaint. Plaintiffs opposed the motion on December 23, 2019. Defendants filed a reply brief on January 29, 2020. On June 17, 2020, the Court issued an order denying-in-part and granting-in-part Defendants' motion to dismiss. In that order, the Court dismissed Plaintiffs' claims for breach of express warranty, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, unjust enrichment; fraud and suppression as to Plaintiff Paul Finkenauer's and Lorne Collier's fraudulent concealment claims, and violations of the South Carolina Unfair Trade Practices Act, Ohio Consumer Sales Practices Act as to Plaintiff Steve Burton's class action allegations, Oregon Unlawful Trade Practices Act and New Jersey Consumer Fraud Act. The Defendants' motion to dismiss as to all other Litigation Claims was denied.

On March 23, 2021, Plaintiffs filed a Second Amended Complaint that, among other things, added Plaintiffs Jose Figueroa, Glenn Scudder, Ann Fulmer, Rudi Rosenfeld, Taryn Armstrong, Sean Hunter, Richard Hall, Angelo Farrow, and Larry Acunto, and claims arising under the laws of nine additional states and additional proposed putative state subclasses. On May 10, 2021, Defendants filed a partial motion to dismiss the Second Amended Complaint.  Plaintiffs opposed the motion on July 2, 2021.  Defendants filed a reply brief on July 30, 2021.

On October 4, 2021, the Court issued an order denying-in-part and granting-in-part Defendants' partial motion to dismiss.  In that order, the Court affirmed its prior motion to dismiss order and also dismissed Plaintiffs' claims for breach of express warranty, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, and unjust enrichment. The Court also dismissed Plaintiffs' claim for equitable and injunctive relief, Plaintiffs Glenn Scudder, Larry Acunto, and Sean Hunter's fraudulent concealment claims, claims for violations of Georgia's Uniform Deceptive Trade Practices Act and Missouri Merchandising Practices Act, and Plaintiff Sean Hunter's omission-based California Unfair Competition Law and Consumers Legal Remedies Act claims.  The Defendants' motion to dismiss as to all other Litigation Claims was denied.

As the Court is aware, *Callen* has been intensely litigated from its inception. Garrison Decl., at ¶ 17. The *Callen* Plaintiffs and their counsel engaged in extensive pre-filing factual investigation beginning in the late Winter of 2019, when the undersigned counsel began receiving communications from owners of Subject Vehicles complaining about issues related to the Litigation Claims. Garrison Decl., at ¶ 6. The undersigned began diligently investigating the issues raised by the Mercedes owners that requested assistance. The undersigned researched the Litigation Claims and the Defendants' response to it through information provided by the National Highway Traffic Safety Administration ("NHTSA"). The undersigned counsel also reviewed and researched consumer complaints and discussions of the Litigation Claims in articles and forums online, and collected various operator manuals and Technical Service Bulletins discussing the defect. Garrison Decl., at ¶ 7.

The *Callen* Plaintiffs' counsel also conducted detailed interviews with prospective class members regarding their pre-purchase research, their purchasing decisions, and their repair histories, ultimately interviewing and communicating with dozens of prospective class members. Garrison Decl., at ¶ 8. After digesting all of the information garnered, the undersigned counsel conducted research into the various causes of action and analyzed similar automotive actions, developed a plan

for litigation based on class members' reported experiences with their Subject Vehicles, and subsequently initiated the present action.  Garrison Decl., at ¶ 9.

Further, the undersigned counsel also retained leading experts in engineering processes and chemistry who investigated the alleged defect and identified the alleged defect in the Subject Vehicles. Garrison Decl., at ¶ 10.  The undersigned counsel also engaged a damages expert to assess individual and Class-wide damages. *Id.*  The undersigned counsel's efforts are reflected in and illustrated by the length and detail of the *Callen* Plaintiffs' Complaints, as amended. Garrison Decl., at ¶ 11.

Defendants sought to dismiss the *Callen* action in its entirety on multiple grounds, but the *Callen* Plaintiffs ultimately prevailed on several causes of actions, allowing the remaining claims to proceed to discovery.  Garrison Decl., at ¶¶ 14-16. Prior to reaching the proposed Settlement Agreement, the Parties conducted extensive discovery.  Garrison Decl., at ¶ 20.  They negotiated and spent substantial time working out an electronic discovery protocol that incorporated specific search terms to effectively produce responsive and relevant documents.  Garrison Decl., at ¶ 21. The *Callen* Plaintiffs' counsel served requests for production and interrogatories to each Defendant.  Garrison Decl., at ¶¶18-19.  In total, they served 66 requests for production and 16 interrogatories on each Defendant.  *Id.*  In response, Defendants produced thousands of pages of documents as well as

extensive warranty, sales and repair data compiled from their warranty databases. *Id.*

The *Callen* Plaintiffs' counsel met and conferred with Defendants' counsel several times on their discovery responses, and the *Callen* Plaintiffs were continuing to demand documents and information at the time they reached the settlement-in-principle. Garrison Decl., at ¶¶ 21-22. The *Callen* Plaintiffs' counsel then served a second set of discovery on Defendants that was focused on confirming certain representations made in settlement negotiations and expect timely responses. Garrison Decl., at ¶ 24. The *Callen* Plaintiffs used an e-discovery vendor to assist with the technical aspects of the production and have since reviewed each page of the produced documents, coding them for issues. Garrison Decl., at ¶¶ 19-23.

Defendants issued substantial discovery, including 17 requests for admission, 22 interrogatories, and 43 requests for production to each *Callen* Plaintiff. Garrison Decl., at ¶ 20. The *Callen* Plaintiffs responded to each discovery request and produced hundreds of pages of documents and offered their Class Vehicles for inspection. *Id.* Since discovery opened in this case, the undersigned have had numerous meet and confers with Defendants' counsel to address discovery issues, vehicle inspection protocols, electronic search terms and databases, and responses and objections to discovery served in the Litigation. Garrison Decl., at ¶ 21. The

11

Parties resolved most of those issues after substantial time and effort and without resort to court intervention. *Id.*

Concurrently, the *Callen* Plaintiffs researched potential expert witnesses and ultimately interviewed four experts. Garrison Decl., at ¶ 22. Two of these experts were automobile manufacturing process experts and two of these experts were chemical specialists with specific expertise in automobile interior coatings. *Id.* The *Callen* Plaintiffs ultimately retained two testifying experts. *Id.* The *Callen* Plaintiffs also issued three subpoenas *duces tecum* to various third-parties, including a Chinese supplier of the Burl Walnut Trim. *Id. At* the time of settlement, the *Callen* Plaintiffs and those third parties were still meeting and conferring regarding their responses, or lack thereof, and document production. *Id.*

The *Callen* Plaintiffs also negotiated vehicle inspection protocols. Garrison Decl., at ¶ 23. The Parties then scheduled a vehicle inspection and conducted that inspection before they were placed on hold pending mediation. *Id.*

The *Callen* Plaintiffs first broached the topic of settlement in February 2020, but Defendants did not express a corresponding interest until the late Summer of 2021, when settlement negotiations began in earnest. Garrison Decl., at ¶25. The Parties engaged in intensive discussions and exchanges of information, including proposing potential settlement frameworks, but fell short of reaching a final

agreement. *Id*. Thereafter, the Parties agreed to mediate this case utilizing Hunter Hughes.[2] *Id*. The Parties mediated with Hunter Hughes on November 1, 2021, and November 5, 2021. Garrison Decl., at ¶ 26. During that mediation process, the Parties first reached an agreement-in-principle on the terms and conditions of the Class Member settlement, and later on attorney fees, litigation costs and expenses, class representative incentives and administrative costs, subject to approval by the Court. *Id.*, at ¶¶ 26-27. Importantly, the Parties only mediated and negotiated issues regarding attorneys' fees, litigation costs and expenses, incentive awards and administrative costs *after* reaching an agreement-in-principle as to the terms and conditions of the settlement for Class Members. *Id*., at ¶ 27. The Parties finalized a written Term Sheet on November 2, 2021. *Id*. The Parties then worked on and executed the Settlement Agreement. *See, generally,* PSA.

The Proposed Settlement in this case will resolve the claims of all Class Members in the United States. Garrison Decl., at ¶ 28. Accordingly, for purposes of effectuating this proposed Settlement in this action and in this District, the *Callen* Plaintiffs seek an Order pursuant to the All Writs Act that preliminarily enjoins parallel proceedings. *Id.* at ¶ 28; *see, also, infra,* Section IV.

---

[2] Hunter Hughes is widely respected for his ethics, legal knowledge, and wealth of experience, particularly in automotive class actions and complex cases, and resolving disputes in the best interests of all concerned parties.

## II.    SUMMARY OF SETTLEMENT TERMS

### A.  THE SETTLEMENT CLASS DEFINITION

The proposed Settlement Class[3] is defined as current owners, former owners, current lessees, and former lessees of Subject Vehicles who purchased or leased their Subject Vehicle in the United States.  Subject Vehicles are defined as any 212 E-Class Mercedes-Benz originally equipped with Burl Walnut Trim and purchased or leased in the United States.  Defendants offered Burl Walnut Trim as an original, interior trim package option for model year 2010-2016 212 E-Class vehicles.

The following persons are excluded from the proposed Settlement Class: (a) Persons who have settled with, released, or otherwise had claims adjudicated on the merits against Defendants that are substantially similar to the Litigation Claims related to the Symptoms Alleged (i.e., alleging that the Burl Walnut Trim in 212 E-Class Mercedes-Benz vehicles substantially fades, grows discolored, and becomes cloudy over time); (b)    Defendants and their officers, directors and employees, as well as their corporate affiliates and the corporate affiliates' officers, directors and employees; (c) Counsel to any of the parties; and (d) The Honorable Thomas W. Thrash, Jr., Hunter R. Hughes, and members of their respective immediate families.

### B.  SETTLEMENT CLASS MEMBER BENEFITS

---

[3] *See* PSA, §1.28.

The Settlement provides exceptional benefits that directly address the harm to Class Members.   These benefits include: (1) reimbursement for Qualified Past Repairs that addressed the Litigation Claims and (2) a forward-looking, extended warranty to cover Qualified Future Repairs related to the Litigation Claims through an Authorized Service Center.   Importantly, the extended warranty offered on the Burl Walnut Wood Trim is not dependent upon mileage – said another way, the extended warranty has unlimited mileage and is only dependent upon the age of the Class Vehicle.

More specifically, subject to the specific terms of the Settlement Agreement, the Settlement covers pre- and post-Settlement repairs to the Burl Walnut Trim in 212 E-Class Mercedes-Benz vehicles, which substantially fades, grows discolored, and becomes cloudy over time ("Qualified Repairs").   The Qualified Repairs are to be reimbursed on a sliding scale depending on age of the vehicle at the time of the repair or at the time the issue was presented to Defendants.   Pursuant to stated requirements and limitations, the Settlement covers repairs related to the Litigation Claims that occur during the first fifteen years (180 months) from the date that the vehicle was put into service.  *See* PSA, § 4.  Qualified Repairs that occur before the Effective Date are eligible for reimbursement as Qualified Past Repairs.  Qualified Repairs requested after the Effective Date are eligible for extended warranty

coverage as Qualified Future Repairs and must be performed at an Authorized Service Center. *Id.* This structure ensures that every Class Vehicle is similarly eligible for coverage up to 15 years.



### 1. <u>Reimbursement for Qualified Past Repairs.</u>

Subject to the specific terms of the Settlement Agreement, Qualified Past Repairs will be reimbursed on a sliding scale. PSA, § 4.A. The sliding scale applies as of the date the Qualified Past Repair was made and, generally, the percentage of reimbursement or coverage available for a particular repair is based on the Class Vehicle's age on the date of repair as follows:

| Vehicle Age Time Period | Effective Warranty Extension From 4 Year, 50,000 Mile New Vehicle Limited Warranty | Reimbursement/ Coverage Amount |
| --- | --- | --- |

| | | |
|---|---|---|
| <u>Category 1</u>: Subject Vehicles that have been in service for less than 8 years (96 months). | 4 years and unlimited miles | 75% |
| <u>Category 2</u>: Subject Vehicles that do not fall within Category 1 and have been in service for less than 10 years (120 months). | 6 years and unlimited miles | 55% |
| <u>Category 3</u>: Subject Vehicles that do not fall within Category 1 or 2 and have been in service for less than 13 years (156 months) | 9 years and unlimited miles | 50% |
| <u>Category 4</u>: Subject Vehicles that do not fall within Categories 1, 2 or 3 and have been in service for less than 15 years (180 months) | 11 years and unlimited miles | 30% |

*See id.*, § 4.1.   There is no limit to the number of Qualified Past Repairs that Defendants will reimburse.  *See id*.  However, no double recovery is allowed.  Thus, if the Class Member has been reimbursed previously by Defendants, insurance, or some other form of coverage, or if Defendants already covered the repair under the warranty or goodwill, the costs associated with that repair shall not be subject to reimbursement.  *See id.,* § 4.2.

## 2.   **Reimbursement for Qualified Future Repairs.**

Qualified Future Repairs will be extended warranty coverage on a sliding scale based on the vehicle's age when the Subject Vehicle is presented to an Authorized Service Center for repair or, if the Class Member was denied warranty

or goodwill coverage before the Notice Date, based on the vehicle's age when the Class Member first presented the Subject Vehicle to an Authorized Service Center or notified Defendants of the Symptoms Alleged.  PSA, §§ 4.B, 9.11.  Importantly, Class Members may preserve their claim for Qualified Future Repairs by timely submitting a properly completed Reimbursement Claim Form within sixty (60) days of the Notice Date.  PSA, § 9.11.  Generally, the percentage of warranty coverage available for a Qualified Future Repair is as follows:

| Vehicle Age Time Period | Effective Warranty Extension From 4 Year, 50,000 Mile New Vehicle Limited Warranty | Reimbursement/ Coverage Amount |
|---|---|---|
| Category 1: Subject Vehicles that have been in service for less than 8 years (96 months). | 4 years and unlimited miles | 75% |
| Category 2: Subject Vehicles that do not fall within Category 1 and have been in service for less than 10 years (120 months). | 6 years and unlimited miles | 55% |
| Category 3: Subject Vehicles that do not fall within Category 1 or 2 and have been in service for less than 13 years (156 months) | 9 years and unlimited miles | 50% |

| | | |
|---|---|---|
| Category 4: Subject Vehicles that do not fall within Categories 1, 2 or 3 and have been in service for less than 15 years (180 months) | 11 years and unlimited miles | 30% |

See id., § 4.3.  Until the Subject Vehicles exceed 15 years, there is no limit to the number of Qualified Future Repairs that can be made.  See id.  All Qualified Future Repairs must be performed at an Authorized Service Center.  See id., § 4.4.

Class Members that need a Qualified Future Repair after Notice Date of the Settlement but before the Effective Date of the Settlement and whose vehicle is less than 15 years from the original in-service date at the time such repair is needed, should get their Subject Vehicle repaired, retain their payment receipts for any qualifying repair performed, and make a claim for reimbursement as a Qualified Past Repair within 60 days of the repair.  See PSA, §§ 1.26, 9.2-9.3.  Subject to the specific terms of the Settlement Agreement, those Class Members will be reimbursed as a Qualified Past Repair.  See id., §§ 4.1- 4.2.  Dispute resolution is available for Class Members who dispute their coverage for Qualified Future Repairs or believe coverage was wrongfully denied.  Id., § 10.

### 3.  The Claims Process Is Simple.

The Settlement provides for a streamlined and straightforward claims process. Class Members can submit reimbursement claims for Qualified Past Repairs by

submitting a Reimbursement Claim Form and supporting documents online or by mail, which the Settlement Administrator will then review to determine eligibility. *See* PSA, §§ 8.6-8.11 and 9.A.  Required supporting documents for Qualified Past Repairs include: (a) Itemized repair order or invoice or other documentation showing that the Subject Vehicle received a qualified repair or replacement (e.g., the repair invoice must show that the Burl Walnut Trim was repaired or replaced) and the cost of the qualified repair or replacement; (b)   Proof   of   documentation   of   the Settlement Class Member's payment for the repair (e.g., credit card statement, invoice showing zero balance, receipt showing payment, etc.); and (c) Proof of the Settlement Class Member's ownership or leasing of the Subject Vehicle at the time of the repair.

If the repair is determined by the Settlement Administrator to be an eligible Qualified Past Repair, payment shall be made to the Class Member.  *See* PSA, § 9.A. Dispute resolution, paid for by Defendants, is available for Class Members who dispute their reimbursements or believe their claim was wrongfully denied. PSA, § 10.

Class Members can receive Qualified Future Repairs by presenting their Vehicle to an Authorized Service Center, which will determine eligibility and perform the repairs.  PSA, § 9.B.  Class Members whose Subject Vehicles are

already 15 years old on the Notice Date can seek a Qualified Future Repair by submitting a Claim Form and documentary evidence showing that the Class Member (a) presented the Subject Vehicle to an authorized Mercedes-Benz dealer for a qualifying repair or provided notice to Defendants at a time when the vehicle had less than 15 years and (b) was denied warranty or goodwill coverage for such repair. If the future repair claim is approved by the Settlement Administrator, the Class Members can receive one Qualified Future Repair by bringing their Vehicle to an Authorized Service Center.

## III.   LAW AND ARGUMENT

The *Callen* Plaintiffs aver that this proposed Settlement meets the standard for preliminary approval and that the appropriate factual and legal bases for class certification exist.   Review of a proposed settlement generally proceeds in two stages: first, a hearing on preliminary approval, followed by a second hearing, on final approval. *See MANUAL FOR COMPLEX LITIG.,* § 21.632 (4th ed. 2004); Rule 23(e)(2).

At the preliminary approval stage, a court conducts a preliminary review to determine whether the proposed settlement is "within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, *4 (S.D. Fla. May 11, 2007) (internal citations omitted).  "[T]he court's primary objective at th[is] point

is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, *NEWBERG ON CLASS ACTIONS* § 13:10 (5th ed. 2015); *MANUAL FOR COMPLEX LITIG.,* § 21.632. After preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected. *See Fresco*, 2007 WL 2330895 at *4; *MANUAL FOR COMPLEX LITIG.,* § 21.632.

The law generally encourages settlement. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong judicial policy favoring settlement as well as by the realization the compromise is the essence of settlement."); *see also Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910) ("[C]ompromises of disputed claims are favored by the courts."). Furthermore, "settlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Carnegie v. Mut. Sav. Life Ins. Co.*, Civ-99-S-3292-NE, 2004 WL 3715446, *17 (N.D. Ala. Nov. 23, 2004) (citations omitted).

In determining whether preliminary approval is warranted, the issue before the Court is whether the settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the settlement should be given to the

settlement class, and a hearing scheduled to consider final settlement approval. The Court is not required at this point to make a final determination as to the fairness of the Settlement Agreement—that decision is made only at the final approval stage, after notice of the settlement has been provided to the Settlement Class, and they have had an opportunity to voice their views of the settlement. *See* 3B J.W. Moore, *MOORE'S FEDERAL PRACTICE* (2d ed. 1996), ¶ 23.80[2.-1] at 23-479. Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (explaining that the issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re: Bromine Antitrust Litig*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

### A. PRELIMINARY APPROVAL IN THE ELEVENTH CIRCUIT

Rule 23(e)(2) identifies criteria for determining whether to grant preliminary approval of a proposed class settlement and direct notice to the proposed class. The proposed Settlement here satisfies all of these conditions.

Rule 23(e)(2) states that a district court should approve a proposed settlement after considering whether:

    (A)    the class representatives and proposed class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the proposed class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorneys' fees, including timing of payment;

(iv)    any agreement required to be identified under Rule 23(e)(3); and,

(D)    the proposal treats Class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts within the Eleventh Circuit use two different standards in considering whether to preliminarily approve a proposed settlement. Some courts find that preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re: Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011). Other courts apply criteria known as the *Bennett* factors. *See Bennett*, 737 F.2d at 986. These factors largely overlap with those in Rule 23(e)(2) and include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at

which the settlement was achieved. *In re: Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, *174 (N.D. Ga. Mar. 17, 2020) (*citing Bennett*, 737 F.2d at 986 and *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011)). The proposed settlement warrants preliminary approval under both standards.

### B.  THE SETTLEMENT MERITS APPROVAL

*First*, as explained in greater detail below, the *Callen* Plaintiffs and Class Counsel have adequately represented the proposed Settlement Class. The *Callen* Plaintiffs do not have any interests antagonistic to other Class Members and have retained lawyers with the necessary qualifications and experience to lead this litigation.  Class Counsel vigorously pursued the claims alleged through successful opposition of Defendants' motions to dismiss and through discovery. *See, e.g.*, *Parsons v. Brighthouse Networks, LLC*, 2:09-CV-267-AKK, 2015 WL 13629647, *12 (N.D. Ala. Feb. 5, 2015) ("This is not a case in which a complaint has been filed and the parties have rushed to a settlement. Thus, all Parties had a keen grasp of the issues, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses.").

*Second*, the Parties negotiated the proposed settlement at arm's length and without collusion. *See* Declaration of Hunter Hughes, ¶¶ 2-10, filed herewith (the

"Hughes Decl."). Indeed, the Parties reached a settlement only after hard-fought independent negotiations and then also mediation over two separate days with a respected mediator. They then subsequently finalized the proposed Settlement Terms through multiple rounds of discussions and drafting revisions. *See, e.g.*, *In re: Checking Account Overdraft Litig.*, 275 F.R.D. at 661 ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness").

*Third*, as explained in greater detail below, the relief provided for the Settlement Class is fair, reasonable, and adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, and the terms of the proposed award of attorney fees. Moreover, the proposal treats class members equitably relative to each other— similarly situated Class Members are treated the same with respect to their eligibility for reimbursement for Qualified Past Repairs and to receive Qualified Future Repairs.

Moreover, pursuant to Fed. R. Civ. P. 23(e)(1), the *Callen* Plaintiffs present sufficient information herein for the Court to determine whether to give notice to the class. For the reasons set forth above, the Court will likely be able to approve the settlement proposal under Fed. R. Civ. P. 23(e)(2) and certify the nationwide

settlement class for purposes of judgment on the proposal. The Settlement Agreement satisfies all of the requirements for preliminary approval and preliminary certification of a nationwide settlement class under Rule 23 as it provides both significant benefits and clear notice to Class Members informing them of the Settlement, how to claim settlement benefits, and the procedures for opting out or objecting to the settlement.

### 1. The Settlement Was The Result Of A Thorough, Informed, Fair Negotiation Process.

Rule 23(e)(2) asks whether "the class representatives and class counsel have adequately represented the class" and "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A). It "identif[ies] matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Adv. Cmte. Note.

Procedurally, the *Callen* Plaintiffs' counsel (proposed Class Counsel) and the *Callen* Plaintiffs (proposed Class Representatives) have conducted themselves in the Class's best interests.[4] As previously set forth herein, proposed Class Counsel has prosecuted this action on behalf of the proposed Class with vigor and dedication for

---

[4] *See* Declarations of Teri Callen, Steve Burton, Paul Finkenauer, Lorne Collier, Jose Figueroa, Glenn Scudder, Ann Fulmer, Rudi Rosenfeld, Taryn Armstrong, Sean Hunter, Richard Hall, Angelo Farrow and Larry Acunto, filed herewith (collectively, "Class Rep. Decls.").

over two years.  The proposed Class Representatives likewise were engaged actively, providing Counsel with information about their Subject Vehicles, submitting to vehicle inspections, conducting extensive discovery, and providing records about their Subject Vehicle's ownership, service, and maintenance. Class Rep. Decls. ¶¶ 3-4.  They were informed about the strengths and weaknesses of their case(s) via discovery and expert consultation, and all have been consulted on, and support, the Proposed Settlement, illustrating their continued willingness to protect the Class going forward.  Class Rep. Decls. ¶¶ 4-5.

In addition, as previously set forth herein, the Proposed Settlement arises out of weeks of serious, informed, and non-collusive negotiations facilitated by mediation conducted on November 1st and November 5th  before an experienced and sophisticated mediator.  *See* Hughes Decl., ¶¶ 2-10. A settlement process facilitated by a mediator weighs heavily in favor of approval.  *See, e.g., Wilson v. EverBank*, 2016 WL 457011, *6 (S.D. Fla. Feb. 3, 2016) ("The very fact of [mediator's] involvement—let alone his sworn declaration—weights in favor of approval."); *In re: Checking Account Overdraft Litig.*, 275 F.R.D. at 661; Adv. Cmte. Note ("involvement of a neutral…mediator…in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

Thus, the procedurally fair manner in which this Proposed Settlement was reached weighs strongly in favor of granting preliminary approval.

### 2. <u>The Settlement Provides Significant Benefits In Exchange For The Compromise Of Strong Claims.</u>

Rules 23(e)(2)(C) and (D) require a "'substantive'" review of a proposed settlement. Adv. Cmte. Note. Specifically, Fed. R. Civ. P. 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account … the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims" and "the terms of any proposed award of attorneys' fees, including timing of payment." And amended Fed. R. Civ. P. 23(e)(2)(D) considers whether "the proposal treats Class members equitably relative to each other."

Each of these substantive considerations are satisfied here. This comprehensive resolution provides much-needed relief to Class members, addresses what the *Callen* Plaintiffs contend is a long-running problem in the Subject Vehicles, and reimburses Class members for incurred costs. *See Amin v. Mercedes-Benz USA, LLC*, No. 1:17-cv-01701-AT, 2020 U.S. Dist. LEXIS 167395, at *6 (N.D. Ga. Sep. 11, 2020) (approving settlement with "sliding scale of reimbursement or coverage percentage based on the Vehicle's age/mileage"); *Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006, at *2 (C.D. Cal. Jan. 30, 2014) (approving sliding scale settlement

29

with a reimbursement schedule ranging from 100% to 25%); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *3 (S.D.N.Y. May 30, 2013) (approving class action settlement that provided benefits for vehicles under a 10-year/100,000 mileage limit, with amount of recovery based on age and mileage); *Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *2 (D.N.J. Mar. 22, 2013) (similar); *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, *2 (S.D. Fla. Apr. 15, 2010) (approving settlement providing for extended car warranty); *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, *8 (M.D. Fla. Sep. 13, 2006) (approving settlement providing for extended warranty for moisture-related problems in refrigerators).

In essence, the Settlement (i) pays for Qualified Past Repairs (subject to the sliding scale) and (ii) covers Qualified Future Repairs that are requested within 15 years from the date the vehicle was put into service (subject to a sliding scale). That means that the Settlement effectively extends the warranty on the Subject Vehicles from 4 years and 50,000 miles (the coverage for interior trim under the standard New Vehicle Limited Warranty or "NVLW") to 15 years and unlimited miles. Importantly, it also removes the mileage limitation from the extended NVLW. This is significant and represents an outstanding result for the Class.

All similarly situated Settlement Class Members are treated equally. Each Settlement Class Member who submits appropriate documentation for Qualified Past Repairs will be reimbursed for those; all those Settlement Class Members that make a claim for Qualified Future Repairs will get those, subject to the age limitation and confirmation that the Symptoms Alleged are present. Moreover, proposed Class Counsel are experienced class action litigators, consumer advocates, trial lawyers, and litigation veterans, and they support this Settlement, acknowledging the uncertainty in whether the Class could achieve a better outcome through further litigation. *See* Garrison Decl., ¶¶ 2-5, 29-31.

### a. The Settlement Mitigates the Risks, Expenses, and Delays of Continued Litigation.

The Proposed Settlement secures significant benefits, even in the face of the inherent uncertainties of litigation. Compromise in exchange for certain and timely relief is unquestionably a reasonable outcome. *See George v. Academy Mort'g Corp. (UT)*, 369 F. Supp. 3d 1356, 1371 (N.D. Ga. 2019) (settlement a "fair compromise" given risks and "certainty of substantial delay").

Pursuing this case was not without risk, and Defendants fought vigorously, challenging the *Callen* Plaintiffs' legal and damages theories. Even after two years of demanding litigation, the *Callen* Plaintiffs would still need to get their proposed class certified, establish Defendants' liability, and prove damages on behalf of the

class.  Further, even if this Proposed Class were certified and upheld on appeal, it would face the risk, expense, and delay of trial and potentially lengthy appellate process, further delaying any recovery for years to come.  Avoiding years of additional litigation in exchange for the immediate certainty of this Proposed Settlement is even more compelling because it allows the *Callen* Plaintiffs and Proposed Class Members in need of a Qualified Repair to immediately obtain one rather than paying for it themselves or going either wholly unreimbursed or without a repair.

### b.   The Claims Process Is Straightforward.

This proposed Settlement provides benefits to Class Members via a simple claims process.  Each Class Member will receive information about the Settlement via the proposed Notice Plan; specifically, postcard notice sent directly to all Class Members (who shall be located via Vehicle Identification Numbers ("VINs")) and establishment of a settlement website. *See, supra,* Section II.B.3. To obtain reimbursement for Qualified Past Repairs and for certain Qualified Future Repairs, Class Members will submit a Claim Form and supporting documents online or by mail. PSA, § 9.A.  After reviewing a past repair claim for completeness and eligibility, the Settlement Administrator will mail a check or send money electronically.  *Id*.  The Notice Plan will also inform Class Members of their

eligibility for Qualified Future Repairs and how to get them. *See, supra,* Section II.B.3; PSA, § 9.A. Defendants will be responsible for all costs related to the Notice Plan, including payment to the Settlement Administrator, which provides additional value to the Class that would normally be deducted from any settlement fund. Class Members also are provided an avenue to challenge the Settlement Administrator's determination of their claims through a Third-Party Neutral, which provides for safeguards to the Class Members during the claims process. *See, supra,* Section II.B.2. Class Counsel also will be available for the duration of the extended warranty to assist Class Members as needed with any issues that arise in securing settlement benefits and providing a safeguard to the Class to ensure that the claims process for Qualified Future Repairs are managed appropriately.

### c. *Counsel Will Seek Reasonable Fees and Costs.*

As set forth above, the *Callen* Plaintiffs' counsel conducted an extensive investigation into the facts and circumstances of this case, and they put in significant time and resources into prosecuting the claims on behalf of the Class. *See, supra,* Section I. Notably, none of the Settlement benefits will be reduced to pay any Court-awarded attorneys' fees or costs to Class Counsel. Defendants will pay attorneys' fees and costs separate and apart from the monies that will be paid to qualified Class

Members.  Of course, this is a tremendous benefit to the Class Members, as it otherwise would reduce their Settlement recovery.

Again, Class Counsel separately negotiated fees and costs only *after* all material terms of the Settlement were agreed upon in principle, which further supports approving this motion and the Settlement.  *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (finding that settlement not collusive where "the fee was negotiated separately from the rest of the settlement, and only after substantial components of the class settlement had been resolved"); *see also In re: Progressive Ins. Corp. Underwriting & Rating Practices Litig.*, 2008 WL 11348505, *2 (N.D. Fla. Oct. 1, 2008).  The *Callen* Plaintiffs' counsel will file a motion for fees and costs within thirty (30) days following the Preliminary Approval Order, so it is available to all potential Class Members before the deadline to object or opt-out of the Settlement.

### 3.  <u>The Settlement Treats Class Members Equitably.</u>

Finally, Fed. R. Civ. P. 23(e)(2)(D) states that a court should consider whether "the proposal treats Class members equitably relative to each other."  This proposed Settlement fairly and reasonably allocates benefits among Class Members, both those who have already paid out-of-pocket costs *and* those who are eligible for future repairs, without any preferential treatment being given to the Plaintiff Class

Representatives or any separate or distinct segment of the Settlement Class. The Settlement provides the same durational period of warranty coverage for every Class Vehicle (15 years) and the same sliding scale of reimbursement or coverage percentage based on the age of the Class Vehicle. The mileage of the Class Vehicle has no bearing on the benefit. Courts have approved similar structured settlements concerning automobile defects. *See, e.g.*, *Pinon v. Daimler AG, et. al*, 1:18-CV-3984-MHC, Dkt. 125 (N.D. Ga. Nov. 30, 2021) (approving settlement with substantially similar sliding scale warranty extension and past repair reimbursement); *Amin*, No. 1:17-cv-01701-AT, 2020 U.S. Dist. LEXIS 167395, at *6 (approving settlement with "sliding scale of reimbursement or coverage percentage based on the Vehicle's age/mileage"); *Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, *6 (C.D. Cal. Sep. 25, 2013) (approving settlement with different eligibility requirements for an extended warranty depending on age of car); *see also Alin v. Honda Motor Co., Ltd.*, 2012 WL 8751045, *3 (D.N.J. Apr. 13, 2012) (approving settlement with different coverage for air condition defect depending on time period/mileage of vehicle).

Class Counsel intends to request service awards for the *Callen* Plaintiff Class Representatives, to be paid by Defendants in addition to the compensation they are otherwise entitled to as a member of the Proposed Class. Class Counsel is aware of

and sensitive to the Eleventh Circuit's recent opinion in *Johnson v. NPAS Solutions, LLC*, which rejected class representative incentive awards.  975 F.3d 1244 (11th Cir. 2020).  However, the plaintiff in that case filed a petition for rehearing *en banc* on October 22, 2020, which has not yet been decided.  Also, some six (6) *amici* have been filed, to-date.  As noted by the dissent in *Johnson*, the holding "will have the practical effect of requiring named plaintiffs to incur costs well beyond any benefits they receive from their role in leading the class." *Id.* at 1264.

Whether the initial holding will ultimately stand is unknown, and there is a reasonable likelihood that the case will continue to be challenged even if the Eleventh Circuit upholds the initial ruling.  The *Johnson* opinion represents a fundamental change in the law that is absent from any other Circuit in the country. The categorical prohibition on class representative incentive awards is an issue of exceptional importance, particularly given they have been approved in every other Circuit and the U.S. Supreme Court has acknowledged the practice of incentive awards.  *See, e.g., China Agritech, Inc. v. Resh*, 584 U.S. __, 138 S. Ct. 1800, 1811 n.7, 201 L.Ed.2d 123 (2018).

In support of the request for service awards to the proposed Class Representatives, the undersigned notes that each spent significant time providing information to Class Counsel, responding to discovery requests, and considering and

blessing this Proposed Settlement.  Class Rep. Decls. ¶¶ 4-5.  Given this significant commitment, service awards are appropriate here.  Should the Court deny the service awards request in light of *Johnson v. NPAS Sols.*, the *Callen* Plaintiffs would request the Court deny the request without prejudice and retain jurisdiction for the limited purpose of revisiting the denial of service awards if *Johnson* is reversed.  *See Hawkins v. JPMorgan Chase Bank, N.A.*, 2 020 U.S. Dist. LEXIS 213064, *3 (M.D. Fla. Nov. 15, 2020) (denying service award request "without prejudice"); *Metzler v. Med. Mgmt. Int'l*, 2020 U.S. Dist. LEXIS 187478, *8 (M.D. Fla. Oct. 9, 2020) (denying service award "at this juncture").

### 4.    <u>There Are No Undisclosed Side Agreements.</u>

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal."  No such agreements exist here.

### 5.    <u>The *Bennett* Factors Support Preliminary Approval.</u>

In addition to the factors set forth in Rule 23(e)(2), courts in the Eleventh Circuit often consider the *Bennett* factors during preliminary approval.  *Adams v. Sentinel Offender Servs., LLC,* No. 1:17-cv-2813-WSD, 2018 U.S. Dist. LEXIS 78841, *20-23 (N.D. Ga. May 10, 2018) (discussing *Bennett*, 737 F.2d at 986).

### a.  *The Benefits of Settlement Outweigh the Risks at Trial.*

The first *Bennett* factor weighs in favor of approval, where there was "no guarantee that the plaintiffs would prevail at trial on their [] claims." *Camp v. City of Pelham*, 2:10-CV-01270-MHH, 2014 WL 1764919, *3 (N.D. Ala. May 1, 2014); *see also Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800, 2013 WL 10167232, *6 (S.D. Fla. Oct. 7, 2013) (granting approval where "success at trial is not certain for Plaintiff[s]."). Although the *Callen* Plaintiffs are confident about their case, the risks involved cannot be disregarded, and success cannot be guaranteed. *See generally In re: Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000) ("[T]he trial process is always fraught with uncertainty."). This is particularly true where, as here, the case "involves complex legal and factual issues that have been hotly contested, and would almost certainly continue to be hotly contested throughout the remaining litigation" and "the ultimate outcome on the merits were uncertain for both Parties." *See Parsons*, 2015 WL 13629647 at *3. The proposed Settlement Agreement avoids these uncertainties and provides the Settlement Class with meaningful and certain relief.

### b.  *The Settlement Is Within the Range of Possible Recoveries and Is Fair, Adequate, and Reasonable.*

The second and third *Bennett* factors—whether the settlement is within the range of possible recoveries and is fair, adequate, and reasonable—are "easily

combined and normally considered in concert." *Camp*, 2014 WL 1764919 at *3. "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).  The range of outcomes extends from no liability to total victory and must be considered in light of the attendant risks. *See, e.g.*, *Beaty v. Contl. Auto. Sys. U.S., Inc.*, CV-10-S-2440-NE, 2012 WL 12895014, *8 (N.D. Ala. Feb. 6, 2012). Thus, even a minimal settlement can be approved.  *See, e.g.*, *Burrows*, 2013 WL 10167232 at *6; *Bennett*, 737 F.2d at 986; *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

The Settlement reached here is outstanding—it is in the upper range of possible recoveries, considering the risks.  *See* Garrison Decl., ¶¶ 29-31.  The Settlement avoids the risks of prolonged litigation, and provides class members with certain, immediate relief. Importantly, it even provides a mechanism whereby Class Members can preserve their benefit and warranty extension category simply by completing a claim form.  Indeed, it provides Class Members with reimbursement for Qualified Past Repairs and a forward-looking, extended and enhanced warranty to cover Qualified Future Repairs through Authorized Service Centers. *See, supra*,

Section II.B. Thus, the Settlement is fair, adequate, and reasonable, based on the range of possible recovery.

### c.   *Continued Litigation Would Be Expensive and Lengthy.*

A settlement that "will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F. Supp. 2d at 1324. Such is the case here. Approval will avoid complex, expensive, and lengthy litigation, saving resources of the parties and the Court. *See, e.g.*, *Parsons*, 2015 WL 13629647 at *4. A national class action such as this one involves seemingly endless discovery; extensive expert involvement; argument and voluminous briefing over certification, summary judgment, and *Daubert* challenges; a lengthy trial; and appeals. The Settlement resolves the case without any further delay and will, if finally approved, offer Class Members an immediate and certain recovery. Thus, this factor also strongly favors preliminary approval of the Settlement.

### d.   *The Degree of Opposition to the Settlement.*

Courts do not consider this factor until notice has been provided to settlement class members. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007).

### e.   *The Stage of Proceedings.*

Courts look at the last *Bennett* factor "to ensure that the *Callen* Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Courts have approved settlements at much earlier stages of litigation. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement). Plaintiff and Class Counsel have litigated this case at the pleadings stage, thoroughly investigated the facts and law, briefed the relevant legal issues, and reviewed substantive evidence relating to the claims and defenses. *See Parsons*, 2015 WL 13629647 at *12 ("This is not a case in which a complaint has been filed and the parties have rushed to a settlement.  Thus, all Parties had a keen grasp of the issues, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses.").  Additionally, in *Callen*, substantial discovery has occurred, documents have been produced on both sides, and an inspection of one Subject Vehicle was scheduled and occurred.  Moreover, the *Callen* Plaintiffs requested and received from the Defendants an affidavit confirming the completeness and accuracy of the warranty, sales and repair data

produced by them related to the Litigation Claim, including the total universe of Subject Vehicles sold or leased, the costs of repair under warranty related to the Litigation Claim, dates of repair, and claims covered by goodwill, among other information. *See* Garrison Decl., ¶ 26. Moreover, the *Callen* Plaintiffs have issued confirmatory discovery to confirm the details in that declaration and to confirm other relevant details related to complaints regarding the Burl Walnut Trim, among other information. Settlement here is not premature. Therefore, the *Bennett* factors, like the Rule 23 factors, strongly support approval of the settlement.

### C.  THE COURT WILL BE ABLE TO CERTIFY THE SETTLEMENT CLASS

Where a class has not been certified prior to settlement, the Court must also consider the prospect of settlement class certification in determining whether to direct notice to the class. *See, e.g., Columbus Drywall & Insulation, Inc.*, 258 F.R.D. at 553 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("In order to certify the settlement class, the Court must examine whether the settlement class complies with Rule 23…[and] engage in an independent analysis to determine whether plaintiffs' proposed settlement class complies with Rule 23(a) and (b).")). While the ultimate decision on certification is not made until the final approval hearing, at the preliminary approval stage the parties must nevertheless "ensure that the court has a basis for concluding that it likely will be able, after the final hearing,

to certify the class." Adv. Cmte. Note. To be certified, a class must meet all of Rule 23(a)'s requirements and the requirements of one subsection of 23(b).

The Class readily satisfies these requirements and class certification for settlement purposes is due to be granted. *See Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 542 (S.D. Fla. 2015) (certifying class based on uniform auto defect with exhaust from vehicles).

### 1. The Class Satisfies Rule 23(a).

#### a. The Class Is Sufficiently Numerous.

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the class exceeds 40 members. *See, e.g.*, *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Over 243,000 Subject Vehicles were sold and/or leased in the United States and the proposed Class, which includes likely over one hundred thousand current and former owners and lessees of Subject Vehicles. *See* Garrison Decl., ¶ 31. Thus, the numerosity requirement of Rule 23(a)(1) is satisfied.

#### b. Common Questions of Law and Fact Exist.

"To satisfy the commonality requirement, Plaintiffs must show that questions of law or fact are common to the entire class." *Melanie K. v. Horton*, 2015 WL

1308368, *4 (N.D. Ga. Mar. 23, 2015). "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1354 (11th Cir. 2009). The "commonality element is generally satisfied when a plaintiff alleges that Defendants have engaged in a standardized course of conduct that affects all class members." *In re: Checking Account Overdraft Litig.*, 307 F.R.D. 656, 668 (S.D. Fla. 2015).

Here, the *Callen* Plaintiffs contend that the Class claims are rooted in common questions of fact as to the Litigation Claims in Subject Vehicles and Defendants' alleged representations and omissions regarding the alleged defective nature of the Burl Walnut Trim. Dkt. 1, 7, 16, and 55. They further contend that the Symptoms Alleged are experienced consistently by Class Members. *See* Garrison Decl., ¶ 31. These common questions will, in turn, generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681 (S.D. Fla. 2009) ("critical issue of whether the [airbag occupant classification system] in [class vehicles] was defective is common to all putative class members").

### c.    The Class Representatives' Claims Are Typical.

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defense of the class." *Williams v. Wells Fargo Bank*, 280 F.R.D. 665, 672-73 (S.D. Fla. 2012).   A "representative plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and his or her claims are based on the same legal theory." *In re: Tri-State Crematory Litig.*, 215 F.R.D. 660, 690 (N.D. Ga. 2003).

Here, the same alleged course of conduct injured the proposed Class Representatives in the same manner it has injured all other Class Members. The proposed Class Representatives, like other proposed Class Members, contend they purchased or leased their Subject Vehicles without knowing about the alleged defective nature of the Burl Walnut Trim.  S*ee Rosen*, 270 F.R.D. at 682 (holding the plaintiff typical because he alleged same car defect as rest of class). Like all proposed Class Members, the proposed Class Representatives further contend their Subject Vehicles should have been free from any interior trim defects and free from the Symptoms Alleged.  Finally, the proposed Class Representatives and proposed Class Members will similarly, and equitably, benefit from the Settlement.  *See*

45

Garrison Decl., ¶ 31.  As such, the typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied.

### d.   The Class Representatives and Class Counsel Are Adequate.

Where "the representative parties will fairly and adequately protect the interests of the class," the adequacy requirement of Fed. R. Civ. P. 23(a)(4) is met. "To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interest antagonistic to the interests of the class." *Sanchez-Knutson*, 310 F.R.D. at 540.

Here, the Class Representatives have demonstrated that they are familiar with the facts of this case and understand their duties and fiduciary obligations. *See, supra,* Section IV.B.1.  In addition, the Class Representatives have no interests antagonistic to Class Members and will continue to vigorously protect the Class, as they have throughout this litigation.

Under Fed. R. Civ. P. 23(g), "a court that certifies a class must appoint class counsel." In appointing class counsel, the court must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources

that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

The proposed Class Counsel regularly engage in consumer class action litigation and other complex litigation similar to the present action, and they have dedicated substantial resources to the prosecution of this action.  *See* Garrison Decl., ¶¶ 2-32.  Moreover, counsel have vigorously and competently represented the *Callen* Plaintiffs' and Settlement Class Members' interests in this action and will continue to fulfill their duties to the class.   *Id.*A firm resume for proposed Class Counsel is attached, and it describes their experience in class actions and complex civil litigation. *See* Garrison Decl., at Exs. A and B.

### 2.   <u>The Class Satisfies Rule 23(b)(3).</u>

Here, not only do "questions of law [and] fact common to class members predominate over any questions affecting only individual members", class treatment is also "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.   *Common Issues of Law and Fact Predominate.*

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. __, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016) (citation omitted).  The predominance requirement is satisfied if common issues have a "direct impact on every class member's effort to

establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (*quoting Babineau v. Fed. Express Corp.,* 576 F.3d 1183, 1191 (11th Cir. 2009)).  At all times, "efficiency is the overriding, textually-mandated concern" and class treatment of claims stemming from a "common course" of conduct is favored. *In re: Checking Account Overdraft Litig.,* 307 F.R.D. at 673. "Predominance is 'a test readily met in certain cases alleging consumer fraud,' particularly where…uniform practices and misrepresentations give rise to the controversy." *Id.* (*quoting Amchem*, 521 U.S. at 625).

In this case, questions of law and fact common to the claims of Class Members predominate over any questions affecting only individual members. Specifically, the *Callen* Plaintiffs contend that the Litigation Claims are common across Subject Vehicles. The *Callen* Plaintiffs also contend the Defendants' Burl Walnut Trim, interior design processes, and marketing were consistent across the Subject Vehicles. Predominance is therefore satisfied.

### b. *Class Treatment Is Superior.*

Superiority looks to the "relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). Under Rule 23(b)(3), the Court

considers a "non-exhaustive list of four factors" in making its superiority determination: "(1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *Id.*

Here, each factor falls in favor of class certification: (1) there is no evidence implicating the first factor; (2) there are no parallel cases ongoing; (3) this Court has handled this litigation ably and is fully capable of continuing to do so; and, (4) the final factor, manageability, does not apply here. *Amchem Prods., Inc.*, 521 U.S. at 620 ("a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial.").

The damages sought by each Class Member are quite small relative to the cost of prosecuting an individual claim, especially given the expert-intensive nature of the scientific evidence necessary to prevail. *See Monroe Cty. Empls.' Ret. Sys. v. S. Co.*, 2019 WL 3956139, *27 (N.D. Ga. Aug. 22, 2019) (superiority met where "amount of individual damages is likely to be relatively small"). Likewise, Class treatment is superior from an efficiency and resource perspective. *See Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 317 (S.D. Fla. 2017) ("issues involved in

Plaintiff's claim and the allegations he uses to support same would be, for all intents and purposes, identical to those raised in individual suits brought by any of the members of the modified class."). Therefore, the superiority requirements of Rule 23(b)(3) are satisfied.

### D.  THE PROPOSED CLASS NOTICE IS THE BEST PRACTICABLE

Rule 23(e)(1) requires that the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal" before a settlement may be approved. To satisfy due process, notice must "reach the parties affected" and "convey the required information." *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285-86 (11th Cir. 2007). For a Rule 23(b)(3) settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances…." Fed. R. Civ. P. 23(c)(2)(B).

The Notice Plan proposed meets these standards. The Parties created and agreed on the proposed Notice Plan, including the content and the distribution plan for the notice with the Settlement Administrator—Epiq Class Action Administration ("Epiq"), which is an experienced firm specializing in comprehensive notice settlement management in complex class litigation—who will administer the Notice Plan and claims process.  *See* Declaration of Cameron R. Azari, Esq. Regarding Settlement Notice Plan, ¶¶ 1-10, filed herewith (the "Azari Decl."). The principal

methods of reaching Class Members will be through individual postcard notices by U.S. first class mail to all readily identifiable Class Members, and establishment of a comprehensive settlement website designed to explain Class Members' rights and obligations www.[settlementwebsite].com including, but not strictly limited to: (i) an overview of the litigation; (ii) an explanation of the Settlement benefits and how to claim them; (iii) contact information for Class Counsel; (iv) the address of the comprehensive Settlement Website that will house links to key filings; and, (v) instructions on how to object or opt out. Azari Decl. ¶¶ 11-30. The Notice Plan includes a double-sided Post Card Notice, a Long Form a Notice, Reimbursement Claim Form, and a Qualified Future Repair Claim Form, which are attached as Attachments 2 to 5 of the Azari Decl.  This Notice Plan comports with accepted standards and with this District's Procedural Guidance on notice and opt-outs.

### E. THE PROPOSED SCHEDULE FOR NOTICE AND APPROVAL

In connection with preliminary approval, the *Callen* Plaintiffs request that the Court set a schedule for disseminating notice and a Final Approval Hearing. As set forth in their Notice Plan, the *Callen* Plaintiffs propose the following:

| Event | Deadline |
|---|---|
| Deadline to file Motion for Attorneys' Fees, Costs, and Class Incentive Awards | 30 days after Court enters the Preliminary Approval Order |
| Notice mailed to Class Members ("Notice Date") | 35 days after Court enters the Preliminary Approval Order |

| Settlement Website available to Class Members | 35 days after Court enters the Preliminary Approval Order |
| Deadline to Submit a Claim or Object to or Opt Out of Settlement | 60 days after Notice Date |
| Last day to file Motion for Final Approval of Settlement | 30 calendar days before the Final Approval Hearing |
| Final Approval Hearing | At least 140 days after entry of Preliminary Approval Order |

This schedule is similar to those used in other class settlements and provides due process to Class Members.

## IV.  THE COURT SHOULD PRELIMINARILY ENJOIN PARALLEL PROCEEDINGS.

Finally, the *Callen* Plaintiffs seek entry of an Order preliminarily enjoining all Class Members who do not timely opt out from the Settlement Class from filing, prosecuting, maintaining or continuing litigation in federal or state court based on or related to the claims or facts alleged in *Callen*.  This type of injunctive relief is commonly granted in preliminary approvals of class action settlements pursuant to the All Writs Act.

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  The Act empowers the Court to enjoin "conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." *In re: Am. Online*

*Spin-Off Accounts Litig.*, No. CV 03-6971-RSWL, 2005 U.S. Dist. LEXIS 45625, *14 (C.D. Cal. May 9, 2005) (*quoting ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

In the class action context, the All Writs Act has been invoked by federal courts to enjoin persons not within the court's jurisdiction from frustrating a court order or court-supervised settlement. *See*, *e.g.*, *In re: Baldwin-United Corp.*, 770 F.2d 328, 335-38 (2d Cir. 1985); *see also In re: Bridgestone/Firestone, Tires Prods. Liab. Litig.*, 333 F.3d 763, 769 (7th Cir. 2003) (approving "issu[ance of] an injunction [under the All Writs Act] that prevent[ed] all members of the putative national classes, and their lawyers," having "classes certified over defendants' opposition with respect to the same claims").  The Act extends a court's authority "to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompass those who have not taken any affirmative action to hinder justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977).

In cases such as this, where parties to complex, class action litigation have reached a settlement agreement after lengthy, protracted and difficult negotiations, parallel proceedings can "'seriously impair the federal court's flexibility and authority' to approve settlements." *In re: Baldwin-United Corp.*, 770 F.2d at 337

(citation omitted); *see also In re: Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (finding threats to court's jurisdiction "particularly significant where there are conditional class certifications and impending settlements in federal actions").   Under these circumstances, the Court has the power and authority to enjoin current or future federal proceedings and future state court proceedings. *See In re: Joint E. & S, Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.D.N.Y. & S.D.N.Y. 1990) ("Whether viewed as an affirmative grant of power to the courts or an exception to the Anti-Injunction Act, the All Writs Act permits courts to certify a national class action and to stay pending federal and state cases brought on behalf of class members."); *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) (concluding that district court has authority to enjoin prospective state court actions).

Accordingly, pursuant to its authority under the All Writs Act, the Court should include in its Order a preliminary injunction against parallel proceedings pending the settlement approval process.  *See, e.g., Grogan v. Aaron's Inc.,* No. 1:18-cv-02821-JPB, Slip Op. at p. 14 (N.D. Ga. May 1, 2020), attached hereto as Exhibit 2 ("Pending the final determination of whether the Settlement should be approved, . . . all Settlement Class Members are hereby enjoined from commencing, pursuing, maintaining, enforcing, or prosecuting . . . Released Claims in any judicial, administrative, arbitral, or other forum, against any of the Released Parties. . . . This

54

injunction is necessary to protect and effectuate the Settlement Agreement, this Preliminary Approval Order, and the Court's flexibility and authority to effectuate the Settlement Agreement and to enter Judgment when appropriate and is ordered in aid of this Court's jurisdiction and to protect its judgments."); *Feller v. Transamerica Life Ins. Co.,* No. 16-cv-01378 CAS (GJSx)*,* 2018 U.S. Dist. LEXIS 196062, *5 (C.D. Cal. Nov. 16, 2018) ("As part of [the preliminary approval] order, the Court issued a stay, which enjoins all settlement class members from pursuing or participating in cases with claims or causes of action (1) related to those in the consolidated *Feller* action or (2) released by the Settlement Agreement."); *In re: Mexico Money Transfer Litig.*, 98 C 2407, 98 C 2408, 1999 U.S. Dist. LEXIS 17268, *13 (N.D. Ill. Oct. 13, 1999) (enjoining "all parallel and overlapping litigation in other forums" and holding "injunctions are needed to prevent relitigation of similar matters and to enforce this court's jurisdiction over the nationwide class action.") .

## V.    CONCLUSION

For all the reasons set forth herein, the *Callen* Plaintiffs respectfully request the Court (1) grant preliminary approval of the proposed Settlement Agreement; (2) preliminarily certify the proposed nationwide Settlement Class; (3) direct Notice to the Class; (4) appoint Class Counsel; (5) schedule a Final Approval hearing; and (6) preliminarily enjoin all parallel proceedings under the All Writs Act.

Respectfully submitted this the 5th day of March, 2022.

>*/s/ James F. McDonough, III*
>James F. McDonough, III (GA Bar No. 117088)
>**ROZIER HARDT MCDONOUGH PLLC**
>3621 Vinings Slope, Suite 4300
>Atlanta, Georgia 30339
>Telephone: (470) 840-9505
>Email: jim@RHMtrial.com
>
>*/s/ Taylor C. Bartlett*
>Taylor C. Bartlett (GA Bar No. 778655)
>W. Lewis Garrison, Jr. (GA Bar No. 286815)
>**HENINGER GARRISON DAVIS, LLC**
>2224 1st Avenue North
>Birmingham, Alabama 35203
>Telephone: (205) 326-3336
>Facsimile: (205) 326-3332
>Email: lewis@hgdlawfirm.com
>Email: taylor@hgdlawfirm.com
>
>*Counsel for the Callen Plaintiffs and*
>*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I caused the foregoing document to be electronically-filed with the Clerk of Court using this Court's CM/ECF system, which caused it to be served this day on all counsel of record who have consented to receive electronic service.

Respectfully submitted this the 5th day of March, 2022.

*/s/ James F. McDonough, III*
James F. McDonough, III (GA Bar No. 117088)

## <u>LOCAL RULE 7.1(D) COMPLIANCE CERTIFICATE</u>

Pursuant to L.R. 7.1(D), this certifies that the foregoing document complies with the font and point selections approved by L.R. 5.1(C). The foregoing document was prepared using Times New Roman font in 14 point.

Respectfully submitted this the 5th day of March, 2022.

*/s/ James F. McDonough, III*
James F. McDonough, III (GA Bar No. 117088)