## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **TERI CALLEN, *et al.,* on behalf of themselves and all others similarly situated,** | **CASE NO: 1:19-CV-01411-TWT** |
| **Plaintiffs,** | **Judge Thomas W. Thrash, Jr.** |
| **v.** | |
| **DAIMLER AG and MERCEDES-BENZ USA, LLC,** | |
| **Defendants.** | |

### PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS, AND INCORPORATED MEMORANDUM OF LAW

COME NOW Plaintiffs Teri Callen, Steve Burton, Paul Finkenauer, Lorne Collier, Jose Figueroa, Glenn Scudder, Ann Fulmer, Rudi Rosenfeld, Taryn Armstrong, Sean Hunter, Richard Hall, Angelo Farrow and Larry Acunto (collectively, "Callen Plaintiffs"), and hereby move this Court unopposed for an Order awarding Class Counsel attorneys' fees and expenses of $4,500,000 payable to Class Counsel, along with Class Representative Service Awards of $5000 for each Class Representative, by Defendants, Daimler AG and Mercedes-Benz USA, LLC (collectively, "Defendants") under the Parties' Settlement.[1]

---

[1] Defined terms take their meaning from the Settlement Agreement (Dkt. 77-1, §1).

# TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND ......................................................1

    A.  BACKGROUND AND PROCEDURAL HISTORY. ..............................................1

    B.  CLASS COUNSEL'S SUBSTANTIAL EFFORTS RELATED TO THE
        LITIGATION LED DIRECTLY TO THE SETTLEMENT AGREEMENT................3

    C.  BENEFITS OF THE SETTLEMENT AGREEMENT. ..........................................8

    D.  FEES AND EXPENSES REQUESTED BY CLASS COUNSEL............................9

II.   ARGUMENT...............................................................................................10

    A.  CLASS COUNSEL'S WORK CREATED SUBSTANTIAL BENEFITS FOR
        THE CLASS. ..........................................................................................10

        1.  The Benefits To The Class Members Resulting From The
             Efforts Of Class Counsel Substantiate An Award Of
             Attorneys' Fees. .........................................................................11

        2.  The Percentage Of The Fund Approach Is The Correct Method
             For Assessing The Appropriateness Of The Fee Request. ..............12

    B.  THE REQUESTED FEE IS WELL WITHIN THIS CIRCUIT'S
        BENCHMARK. ........................................................................................14

        1.  Time and labor expended. ................................................................15

        2.  Complexity Of The Litigation..........................................................16

        3.  The Skill Required: Both Class Counsel's And Opposing
             Counsel's Quality Of Work .............................................................17

        4.  Preclusion Of Other Employment By The Attorneys Due To
             Acceptance Of The Case..................................................................18

        5.  The Customary Fee, And Whether The Fee Is Contingent Or
             Fixed...............................................................................................19

        6.  Amount Involved And Result Obtained............................................20

        7.  The Undesirability Of The Case. ......................................................21

        8.  Awards In Similar Cases .................................................................22

    C.  Class Counsel's Expenses .......................................................................23

D.  Class Representative Service Awards ......................................................24

CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185 (S.D. Fla. 2006)  18, 24

*Amin v. Mercedes-Benz USA, LLC*, No. 1:17-cv-01701-AT, 2020 U.S. Dist. LEXIS 167395 (N.D. Ga. Sep. 11, 2020)................................................... 10, 20

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D. N.Y. 1979)......................................................................................22

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ..............................................................16

*Blum v. Stenson*, 465 U.S. 886 (1984) .............................................. 13, 19

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ....................... 10, 11, 13

*Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)................ passim

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) .......................... 10, 12

*Columbus Drywall & Insulation v. Masco Corp.*, 2012 U.S. Dist. LEXIS 196030 (N.D. Ga. Oct. 26, 2012) ......................................................23

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011)............... 14, 22

*George v. Acad. Mortg. Corp.*, 369 F.Supp.3d 1356 (N.D. Ga. 2019) ............ 12, 19

*Hawkins v. JPMorgan Chase Bank, N.A.*, 2020 U.S. Dist. LEXIS 213064 (M.D. Fla. Nov. 15, 2020) ...............................................................25

*In re: Ampicillin Antitrust Lit.*, 526 F.Supp. 494 (D. D.C. 1981)...........................22

*In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-CV-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 6, 2019)...............................................10

*In re: Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D. Fla. 2011) ..22

*In re: Crazy Eddie Sec. Lit.*, 824 F.Supp. 320 (E.D. N.Y. 1993) ...........................23

*In re: Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) 10, 20

*In re: Int'l Recovery Corp. Sec. Litig.,* No. 92-1474-Civ-Atkins (S.D. Fla., June 2, 1994) ...................................................................................22

*In re: Sound Advice, Inc. Sec. Litig;* No. 92-6457-Civ-Ungaro-Benages (S.D. Fla. March 25, 1994)...........................................................................22

*In re: U.S. Bancorp Lit.*, 291 F.3d 1035 (8th Cir. 2002) .........................................23

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ..... 14, 15

*Johnson v. NPAS Solutions, Inc.*, 975 F.3d 1244 (11th Cir. 2020) ........................24

*Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ...............................19

*Metzler v. Med. Mgmt. Int'l*, 2020 U.S. Dist. LEXIS 187478 (M.D. Fla. Oct. 9, 2020) .......................................................................................................................25

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) ...................................... 11, 12

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 265 (9th Cir. 1989)................11

*Pinto v. Princes Cruise Lines, Ltd.*, 513 F.Supp.2d 1334 (S.D. Fla. 2007) 20, 21, 22

*R.C. by Ala. Disabilities Advocacy Program v. Nachman*, 992 F.Supp. 1328 (M.D. Ala. 1997)...........................................................................................................16

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ......................12

*Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983).......................................................15

*Reiser v. Del Monte Properties Co.*, 605 F.2d 1135 (9th Cir. 1979)........................12

*Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992)...........................................17

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) ...................................... 10, 12

*Tapken v. Brown,* No. 90-0691-Civ-Marcus (S.D. Fla. 1995) ................................22

*Trustees v. Greenough*, 105 U.S. 527 (1882) ................................................... 10, 12

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999).... 13, 14, 22

*Yates v. Mobile Cty. Personnel Bd.*, 719 F.2d 1530 (11th Cir. 1983) ....................16

## **Treatises**

Manual for Complex Litigation (Fourth) § 21.7 (2004) .........................................11

# I.    INTRODUCTION AND BACKGROUND

## A.  BACKGROUND AND PROCEDURAL HISTORY.

This case involves alleged defects in the manufacture, process, materials, and workmanship of the Subject Vehicles, and it includes allegations regarding misleading marketing, advertising, warranting, selling, and servicing of 212 E-Class Mercedes-Benz originally equipped with Burl Walnut Trim (the "Subject Vehicles").  The Plaintiffs contend that Defendants knowingly concealed that the Burl Walnut Trim on the Subject Vehicles has a latent defect that causes it to fade, grow discolored, and become cloudy over time.  Class Members either paid out-of-pocket to repair the Symptoms Alleged in the Subject Vehicles or, if not covered by warranty, may be required to do so in the future.  Defendants deny the Callen Plaintiffs' allegations in full and further deny that they acted improperly or are liable for the Callen Plaintiffs' alleged damages.

On March 28, 2019, Plaintiff Teri Callen filed this action in this District on behalf of a Nationwide class and South Carolina and North Carolina subclasses.  *See* Dkt. No. 1.  Defendants' motion to dismiss the case in its entirety on multiple grounds on May 28, 2019 (*see* Dkt. No. 7) was mooted by the filing of the First Amended Complaint on  August 1, 2019 (Dkt. No. 16).  Defendants moved to dismiss the First Amended Complaint in its entirety on multiple grounds on October

30, 2019 (*see* Dkt. No. 21).  The Callen Plaintiffs opposed the motion on December 23, 2019 (Dkt. No. 24) and Defendants filed a reply brief on January 29, 2020 (Dkt. No. 25).  On June 17, 2020, the Court issued an order denying-in-part and granting-in-part Defendants' motion to dismiss (Dkt. No. 30).  In that order, the Court dismissed Plaintiffs' claims for breach of express warranty, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, unjust enrichment; fraud and suppression as to Plaintiff Paul Finkenauer's and Lorne Collier's fraudulent concealment claims, and violations of the South Carolina Unfair Trade Practices Act, Ohio Consumer Sales Practices Act as to Plaintiff Steve Burton's class action allegations, Oregon Unlawful Trade Practices Act and New Jersey Consumer Fraud Act. The Defendants' motion to dismiss as to all other Litigation Claims was denied.

On March 23, 2021, the Callen Plaintiffs filed a Second Amended Complaint that, among other things, added Plaintiffs Jose Figueroa, Glenn Scudder, Ann Fulmer, Rudi Rosenfeld, Taryn Armstrong, Sean Hunter, Richard Hall, Angelo Farrow, and Larry Acunto, and claims arising under the laws of nine additional states and additional proposed putative state subclasses (Dkt. No. 59).  On May 10, 2021, Defendants filed a partial motion to dismiss the Second Amended Complaint (Dkt. No. 61).  The Callen Plaintiffs opposed the motion on July 2, 2021 (Dkt. No. 65), and the Defendants filed a reply brief on July 30, 2021 (Dkt. 66).

On October 4, 2021, the Court issued an order denying-in-part and granting-in-part Defendants' partial motion to dismiss (Dkt. No. 70).  In that order, the Court affirmed its prior motion to dismiss order and also dismissed the Callen Plaintiffs' claims for breach of express warranty, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, and unjust enrichment.  The Court also dismissed the Callen Plaintiffs' claim for equitable and injunctive relief, plaintiffs Glenn Scudder, Larry Acunto, and Sean Hunter's fraudulent concealment claims, claims for violations of Georgia's Uniform Deceptive Trade Practices Act and Missouri Merchandising Practices Act, and plaintiff Sean Hunter's omission-based California Unfair Competition Law and Consumers Legal Remedies Act claims. The Defendants' motion to dismiss as to all other Litigation Claims was denied.

**B. CLASS COUNSEL'S SUBSTANTIAL EFFORTS RELATED TO THE LITIGATION LED DIRECTLY TO THE SETTLEMENT AGREEMENT.**

Class Counsel engaged in extensive pre-filing factual investigation beginning in late 2018.  *See* Dkt. No. 77-3, at ¶¶ 6-7.  This investigation covered not only research into consumer complaints related to the Burl Walnut Trim issue, but also involved detailed interviews with hundreds of prospective class representatives, delving into the prospective class representatives' pre-purchase research, their purchasing decisions, and their repair histories.  *Id.* at ¶ 8.  Class Counsel also conducted research into various potential causes of action, analyzed similar

automotive cases, developed a strategic plan for litigation based on the prospective class representatives' reported experiences, and subsequently initiated the present action. *Id.* at ¶ 9. Additionally, Class Counsel separately pursued warranty claims against Defendants on behalf of several individual owners of 590 Mars Red vehicles who were denied warranty coverage. Dkt. No. 76-3, ¶35. Even after filing the present action, Class Counsel continued their investigation into Defendants' actions, and the filing of another class action involving putative class members in several additional states was imminent. Dkt. No. 77-3, at ¶ 11.

In addition, Class Counsel also retained leading consulting experts in engineering and interior automotive materials for inspections, investigated the alleged defect, identified the alleged defect in the Subject Vehicles, and engaged a damages expert to assess individual and Class-wide damages. *Id.* at ¶ 10.

Prior to reaching the Settlement Agreement, the Parties conducted extensive discovery. *Id.* at ¶¶ 19-20. They negotiated and spent substantial time working out an electronic discovery protocol that incorporated specific search terms to effectively produce responsive and relevant documents. *Id.* at ¶ 21. Class Counsel served 66 requests for production and 16 interrogatories on each Defendant. *Id.* at ¶ 18. In response, Defendants produced thousands of pages of documents as well as extensive warranty, sales and repair data compiled from their databases. *Id.*

Class Counsel met and conferred with Defendants' counsel several times regarding their discovery responses, and continued to demand documents and information up until the time the Parties reached the settlement-in-principle. *Id.* at ¶ 19. Class Counsel engaged and utilized an electronic discovery vendor to assist with the technical aspects of the production and have since reviewed each page of the produced documents, coding them for issues. *Id.*

Defendants also issued substantial discovery, including 17 requests for admission, 22 interrogatories, and 43 requests for production to each *Callen* Plaintiff. *Id.* at ¶ 20. The Plaintiffs responded to each discovery request and produced hundreds of pages of documents. *Id.* Once discovery opened, the Parties conducted many meet and confers to address discovery issues, vehicle inspection protocols, electronic search terms and databases, and responses and objections to discovery served in the litigation. *Id.* at ¶ 21. Notably, the Parties resolved most of those issues after substantial time and effort and without court intervention. *Id.*

Concurrently, Class Counsel researched potential expert witnesses and ultimately interviewed four experts. *Id.* at ¶ 22. Two of these experts were automobile manufacturing process experts, and two were chemical specialists with specific expertise in automobile coatings. *Id.* Class Counsel ultimately retained two testifying experts, one of whom spent substantial time preparing for and attending

Plaintiff vehicle inspections.  *Id.*

Class Counsel also issued three subpoenas *duces tecum* to various third-parties, including a Chinese supplier of the Burl Walnut Trim.  *Id.* at ¶ 22.  At the time of settlement, the Callen Plaintiffs and those third parties were still meeting and conferring regarding their responses, or lack thereof, and document production.  *Id.*

The Parties negotiated vehicle inspection protocols, a process that required several revisions of a proposed vehicle inspection protocol in order to get protections for the Plaintiffs' vehicles due to the potential destructive nature of sampling the Burl Walnut Trim.  *Id.* at ¶ 23.  The Parties eventually came to agreement on a protocol. The Parties then scheduled the first of the vehicle inspection and conducted that inspection before they were placed on hold pending mediation.  *Id.*

Class Counsel first broached the topic of settlement in February 2020, but Defendants did not express a corresponding interest until a substantial amount of discovery was exchanged and the first vehicle inspection had been completed, which was in the late Summer of 2021  *Id.* at ¶ 25.  The Parties engaged in intensive discussions and exchanges of information, including proposing potential settlement frameworks, but falling short of reaching a final agreement.  *Id*.  Thereafter, the Parties agreed to mediate this case utilizing with a respected mediator, Hunter Hughes.  *Id*.; Dkt. No. 77-4 (Declaration of Hunter Hughes).  The Parties mediated

with Mr. Hughes on November 1, 2021 and November 2, 2021.  Dkt. No. 77-3 at ¶ 26; Dkt. No. 77-4 at ¶¶ 5-9.  During the mediation process, the Parties first reached an agreement-in-principle on the terms and conditions of the Class Member settlement, and thereafter on the issues, attorney fees, litigation costs and expenses, class representative incentives and administrative costs, subject to approval by the Court.  Dkt. No. 77-3 at ¶ 26; Dkt. No. 77-4, at ¶ 9.  Importantly, the Parties only mediated and negotiated issues regarding attorneys' fees, litigation costs and expenses, and incentive awards *after* reaching an agreement-in-principle as to the terms and conditions of the settlement for Class Members.  Dkt. No. 77-3 at ¶ 26; Dkt. No. 77-4 at ¶ 9.  The Parties finalized a written Term Sheet on November 1, 2021.  Dkt. No. 77-3 at ¶ 27. The Parties then worked on and executed the Settlement Agreement which will resolve the claims of all Class Members in the United States. *See*, *generally*, Dkt. No. 77-1 (Settlement Agreement).

Consequently, Class Counsel has fully demonstrated their tenacity, experience, and dedication to successfully obtaining the relief set forth in the Settlement Agreement.  Finally, Class Counsel will continue to liaise with the Settlement Administrator, which is in the process of providing Notice to the Class, pursuant to the Court's Order granting preliminary approval.  *See* Dkt. No. 79.

C.  BENEFITS OF THE SETTLEMENT AGREEMENT.

The Settlement Agreement provides direct benefits to current and former owners and lessees of over 243,000 covered vehicles, which likely includes hundreds of thousands of current and former owners and lessees of Subject Vehicles. *See* Dkt. No. 77-3 at ¶ 31. Under the Settlement Agreement, Settlement Class Members are reimbursed on a sliding scale depending on age of the vehicle at the time of the repair or at the time the issue was presented to Defendants during the first fifteen years (180 months) from the date that the vehicle was put into service. Qualified Repairs requested after the Effective Date are eligible for extended warranty coverage as Qualified Future Repairs and must be performed at an Authorized Service Center.  Dkt. 77-3 at ¶ 30; Dkt. No. 77-1 at §4 and §9.

In this case, Lee M. Bowron, an experienced actuary with Kerper and Bowron LLC, analyzed the Settlement and calculated the range of the economic impact of the Settlement for Class Members.  *See* Declaration of Lee M. Bowron, dated April 21, 2022, at ¶¶7-8 (the "Bowron Decl.").  Mr. Bowron estimated the value of the relief provided to the Class at between $34.5 million (on the low end) and $51.7 million (on the high end).  *See* Bowron Decl., at ¶¶9-10.  Mr. Bowron provided detailed support for his analysis that lead to his estimate.  *See id.*, at ¶¶11-26.  In sum, Class Counsel's efforts resulted in a settlement with the Defendants that

provides an exceptional benefit to the Settlement Class Members.

### D.  FEES AND EXPENSES REQUESTED BY CLASS COUNSEL.

The hours expended by Class Counsel were substantial, but they were also reasonable and necessary, with 4959.1 attorney hours and 754 non-attorney hours spent to date.  *See* Declaration of W. Lewis Garrison, Jr., dated April 21, 2022, at ¶ 9 (the "Garrison Decl."). For their efforts in bringing this case to a successful resolution, Class Counsel requests the Court enter an order granting attorneys' fees for their work in the amount of **$4,456,987.98** in total, payable by Defendants, for creating the Settlement valued at between **$34.5 million** and **$51.7 million**.  *See, supra,* §I.C.  In this case, the attorneys' fees requested by Class Counsel do not reduce the benefits available to the Class because they are offered in addition to, and separate and apart from, the benefits to the Class.  Dkt. No. 77-1 at pp. 14-15. Additionally, Class Counsel seeks an Order approving payment by Defendants for their expenses, in the total amount of **$43,012.02**.  *See* Garrison Decl., ¶¶ 9, 12-14. The total payment requested is equal to **$4,500,000** for payment of Class Counsel's attorney fees and its expenses in prosecuting this action.

"To determine the fee percentage from a constructive fund, courts add the requested fee and expenses to the denominator." *See Amin v. Mercedes-Benz USA, LLC*, No. 1:17-cv-01701-AT, 2020 U.S. Dist. LEXIS 167395, *14 (N.D. Ga. Sep.

11, 2020); *In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-CV-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 6, 2019); *In re: Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993); Manual for Complex Litigation (Fourth) § 21.7 (2004).  Adding the fee and expense request ($4.5M) to the lowest estimate of the Settlement value ($34.5 million) results in a total constructive fund value of $39M.  The requested fee is, *at most,* **13%** of the of the constructive fund.

## II.  ARGUMENT

### A.  CLASS COUNSEL'S WORK SUBSTANTIALLY BENEFITTED THE CLASS.

The common fund doctrine is one of the earliest recognized exceptions to the "American Rule," which generally requires that litigants bear their own costs and attorneys' fees.  Premised on the equitable powers of the court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a benefit in which others have a common interest to be reimbursed for their fees.  *See, e.g., Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527 (1882); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939).

Under this "equitable fund" doctrine, attorneys for the representative plaintiffs in litigation resulting in a recovery for a class may petition the court to be compensated for their efforts.  As explained by the United States Supreme Court in

*Boeing*: "a litigant or a lawyer who recovers a common fund for the benefit of a person other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co.*, 444 U.S. at 478; *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 265, 271 (9th Cir. 1989).

    1.  <u>The Benefits To The Class Members Resulting From The Efforts Of Class Counsel Substantiate An Award Of Attorneys' Fees.</u>

The efforts of Class Counsel led to a settlement covering over 243,000 covered vehicles, which likely includes hundreds of thousands of current and former owners and lessees of Subject Vehicles.   See Dkt. No. 77-3 at ¶ 31.   Under the Settlement Agreement, Settlement Class Members are reimbursed on a sliding scale depending on age of the vehicle at the time of the repair or at the time the issue was presented to Defendants during the first fifteen years (180 months) from the date that the vehicle was put into service. Qualified Repairs requested after the Effective Date are eligible for extended warranty coverage as Qualified Future Repairs and must be performed at an Authorized Service Center.   Dkt. 77-3 at ¶ 30; Dkt. No. 77-1 at §4 and §9.   Given the benefits conferred on the members of the Settlement Class, and the size of the Class itself, it is evident that Class Counsel secured a substantial benefit for the Class.

It is well established that where a representative party has made a "substantial

contribution" to conferring a "benefit" upon an identifiable class, counsel for that party is entitled to an allowance of attorneys' fees relative to the benefit obtained. *See, e.g., Mills*, 396 U.S. at 375; *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *George v. Acad. Mortg. Corp.*, 369 F.Supp.3d 1356, 1375 (N.D. Ga. 2019). The "substantial benefit" doctrine serves the goal of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts. *See, e.g., Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1995 (6th Cir. 1974); *Reiser v. Del Monte*, 605 F.2d 1135 (9th Cir. 1979).

In this case, there is no question that Class Counsel vigorously prosecuted this action, and through their efforts, substantial benefits for the Settlement Class were obtained. Class Counsel's fee and expense requests are more than reasonable in light of the overall value created for the Settlement Class.

 2.  <u>The Percentage Of The Fund Approach Is The Correct Method For Assessing The Appropriateness Of The Fee Request.</u>

The Supreme Court has consistently held that the percentage-of-recovery approach is an appropriate methodology for assessing plaintiff's counsel's fees. *See, e.g., Sprague*, 307 U.S. at 164-67; *Central R.R. & Banking Co.*, 113 U.S. at 123; *Greenough*, 105 U.S. at 533. In *Boeing*, the Supreme Court affirmed a Second Circuit opinion holding that absentee class members had received a benefit within the meaning of the common-fund doctrine and addressed the question "whether a

proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by a judgment." *Boeing Co.*, 444 U.S. at 473. The Court held the attorneys were entitled to a reasonable fee from the whole fund, regardless of claims rate:

> The members of the Class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery [and whether they claim the money or not] cannot defeat each class member's equitable obligation to share the expenses of litigation.

*Id.*. at 481-82 (1980).  Put another way: "under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ." *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984).  Following the Supreme Court's decision in *Blum*, the Eleventh Circuit expressly held that "in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

Given the complexities inherent in class-action litigation, courts are given "great latitude in formulating attorneys' fee awards subject only to the necessity of explaining its reasoning." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999) (internal quotation omitted).  In *Camden I*, the Eleventh Circuit noted that the "majority of common fund fee awards fall between 20% to 30% of the fund," and directed district courts to view this range as a benchmark against which to measure fee awards.  *Camden I*, 946 F.2d at 775.  This benchmark

"'may be adjusted in accordance with the individual circumstances of each case,' using the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Waters*, 190 F.3d at 1294 (quoting *Camden I*, 946 F.2d at 775).

### B. THE REQUESTED FEE IS WELL WITHIN THIS CIRCUIT'S BENCHMARK.

In the present case, Class Counsel have requested a combined fee and expense award of $4.5M, which is at most 13% of the of the constructive fund. *See, supra,* §1(D). This percentage falls well below the benchmark range noted and approved of by the Eleventh Circuit in *Camden I* and its progeny.[2] Regardless, a district court is required to "articulate the specific reasons for selecting the percentage upon which the attorneys' fee award is based," and, in so doing, "should identify all of the factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees." *Camden I*, 946 F.2d at 775. The factors a district court should consider in setting an attorneys' fee award percentage are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

---

[2] Eleventh Circuit suggested in *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) that the *Johnson* factors do not even come into play unless the requested fee falls outside the benchmark: "[w]here the requested fee *exceeds* 25%, the court is instructed to apply the twelve *Johnson* factors." (emphasis added).

> and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 772 n.3 (quoting *Johnson,* 488 F.2d at 717-19 ).  Depending on the specific facts of the case, a district court may totally ignore some facts and give others different relative weights.  *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). A review of the relevant factors confirms that the requested fee, which falls well below the 20% to 30% threshold approved by the Eleventh Circuit in *Camden I*, is exceedingly reasonable under these facts.

1. Time and labor expended.

Class Counsel litigated the case aggressively and comprehensively, spending a total of 4959.1 attorney hours and 754 non-attorney hours pursuing this matter up to this point in time. Garrison Decl. at ¶ 9.  Class Counsel prosecuted this action on a purely contingent-fee basis for recovery of damages related to the defect in certain model and year 212 E-Class Mercedes-Benz that were manufactured and sold with Burl Walnut Trim.  In prosecuting this action, Class Counsel performed substantial legal work which drove the successful settlement of this case, including: pre- and post- litigation research, legal strategizing, and complaint drafting; participating in a lengthy and time-consuming discovery process; evaluating, retaining, and working with multiple experts; and engaging in extensive motion practice.  *See* Dkt. No. 77-

3 at ¶¶ 6-24.  The hours spent by Class Counsel in this case on a contingent basis clearly justifies the requested fee and reimbursement of expenses.

      2. <u>Complexity Of The Litigation.</u>

The complexity of this litigation and "novelty and difficulty of the questions involved" highlight the nature and magnitude of the risk assumed by Class Counsel in accepting representation on a strict, fully contingent basis.  Courts in this Circuit recognize that large class actions involving complex legal theories are, by nature, very difficult.  *See Yates v. Mobile Cty. Personnel Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (extremely complicated litigation requires thorough and detailed research of almost every question involved); *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (observing that the size of the class, the difficult theories of liability, and the inevitable problems associated with damages in complex actions); *see also R.C. by Ala. Disabilities Advocacy Program v. Nachman*, 992 F.Supp. 1328, 1334 (M.D. Ala. 1997) ("The size of the class and the nature and scope of the relief are among the factors that contribute to complexity and difficulty of this case.").

The present case is a complex product liability case which involved substantial research and legal strategy to successfully navigate.  *See* Dkt. No. 77-3 at ¶¶ 6-24.  Further, the settlement covers hundreds of thousands of current and

former owners and lessees of Subject Vehicles.  See Dkt. No. 77-3 at ¶ 31.   To merely call the litigation in this case "complex" or "difficult" would be an understatement.  This factor weighs heavily in favor of awarding Class Counsel the fee petitioned for.

   3.   The Skill Required: Both Class Counsel's And Opposing Counsel's Quality Of Work

Class Counsel has substantial experience in prosecuting class actions, mass torts and other complex litigation. *See* Dkt. No. 77-3 at ¶¶ 2-5.  Given the complexity of the factual and legal issues involved in this matter, Class Counsel's competence and experience in class actions clearly was a significant factor in not only overcoming the Defendant's resistance to settlement, but also in obtaining the ultimate results achieved for the benefit of the Settlement Class.

   In addition to assessing the quality of representation by Plaintiffs' counsel, the Court also should consider the quality of the opposition Class Counsel has faced. *See*, *e.g.*, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).  Throughout this litigation, Defendants were represented by exceptionally capable counsel: King & Spalding, LLC, an international law firm consisting of some 1,200 lawyers across 23 offices,[3] and Squire Patton Boggs, LLP, also an international law firm with over

---

[3] *See* https://www.kslaw.com/ (website of King & Spalding, LLC) (*last accessed April 11, 2022*).

1,500 lawyers across 45 offices.[4]   Garrison Decl., at ¶ 10.   These top-tier international firms are highly competent and professional adversaries with enormous resources, staffed with lawyers of the highest skill and integrity, as evidenced by the quality work product they prepared and submitted through the course of this case. Given the quality of lawyers representing Defendants, Class Counsel's task of obtaining this Settlement was challenging, to say the least.   This factor supports granting this fee petition.

    4. <u>Preclusion Of Other Employment By The Attorneys Due To Acceptance Of The Case.</u>

The fourth factor addresses the inability of Class Counsel to take on other cases while it served as Class Counsel for the Callen Plaintiffs.   "This factor requires the dual consideration of otherwise available business which is foreclosed because of conflicts of interest arising from the representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the case for other purposes." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1209 (S.D. Fla. 2006).   Class Counsel in this case is comprised of two firms with less than thirty attorneys between them.   The significant amount of time committed to this action reflects how Class Counsel were precluded from pursuing other legal

---

[4] *See* https://www.squirepattonboggs.com/en/ (Squire Patton Boggs, LLP) (*last accessed April 11, 2022*).

employment during the course of these proceedings.   Garrison Decl., at ¶ 4.

Combined with the fact this case entailed substantial risk of nonpayment for Class

Counsel, *id.*, this factor also weighs heavily in favor of granting this motion.

### 5. The Customary Fee, And Whether The Fee Is Contingent Or Fixed.

When evaluating a request for fees by Class Counsel, the Court should

consider what a private client would pay for hiring a lawyer on an individual basis.

*Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).   In their

concurring opinion in *Blum v. Stenson,* Justices Brennan and Marshall observed that

"[i]n tort suits, an attorney might receive one-third of whatever amount Plaintiff

recovers. In those cases, therefore, the fee is directly proportional to the recovery."

*Blum*, 465 U.S. at 904; *see also George*, 369 F.Supp.3d at 1382 (noting that "Class

Counsel's 33% fee falls within the range of the private marketplace, where

contingency-fee arrangements are often between 30 and 49 percent of any

recovery").   In a risky, complex product liability case where an individual client

should reasonably expect a contingent fee ranging from 35% to 45%.

In addition to the "customary fee" Class Counsel could have earned

representing an individual, the Court should also consider "the economics involved

in prosecuting a class action." *Camden I*, 946 F.2d at 775.   Specifically, the Court

should look at whether Class Counsel performed their work for the benefit of the

class on a contingent basis, which is "'perhaps the foremost factor'" in determining an appropriate fee award. *Pinto v. Princes Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1339 (S.D. Fla. 2007). Class Counsel prosecuted this case entirely on a contingent-fee basis. Garrison Decl., at ¶¶ 4-8. Consequently, Class Counsel assumed the risk of no payment whatsoever for the considerable amount of work devoted to this matter and have not been compensated for any time or expense to date. *Id*. Class Settlement Counsel nonetheless assumed the risks in pursuing the case, zealously represented the class, and secured a substantial recovery for all class members.

When a settlement agreement is not capped and involved future claims and related contingencies, courts often consider a "reliable estimate" from an expert to be a proxy to the amount received. *In re: Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323 (counsel submitted a "reliable estimate for the purpose of examining the range of value of the settlement" in the form of expert testimony); *see also Amin*, 2020 U.S. Dist. LEXIS 167395 at *6-7. Under these circumstances, these factors weigh heavily in favor a fee award that is, at most, 13% of the constructive fund.

6. <u>Amount Involved And Result Obtained.</u>

Class Counsel undertook a complex product liability class action case and achieved a Settlement providing that Qualified Repairs are reimbursed on a sliding scale depending on age of the vehicle at the time of the repair or at the time the issue

was presented to Defendants during the first fifteen years (180 months) from the date that the vehicle was put into service.  Qualified Repairs requested after the Effective Date are eligible for extended warranty coverage as Qualified Future Repairs and must be performed at an Authorized Service Center.  *See* Dkt. No. 77-3 at ¶ 30.  The Settlement is valued at between $34.5 million and $51.7 million.  *See* Bowron Decl., at ¶¶ 9-26.  This is an exceptional result that was necessarily the result of Class Counsel's efforts. Garrison Decl., at ¶¶ 29-31.  Accordingly, this factor weighs heavily in favor of Class Counsel's requested fee.

       7.  <u>The Undesirability Of The Case.</u>

In the context of this matter, "undesirable" simply means that Class Counsel had to commit an unknown, but substantial number of hours and monetary expenses to a case where the outcome was deeply uncertain.  *See Pinto*, 513 F.Supp.2d at 1340 ("The relevant risks must be evaluated from the standpoint of Plaintiffs' counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight.").  The only thing that was certain from the outset was that litigating this matter would take years to complete.  As previously stated, the chances of prevailing on the claims, on a class-wide basis, were entirely unknown at the outset. Accordingly, for purposes of assessing a reasonable attorneys' fee percentage, this case was "high risk," which weighs heavily on the side of approving the fee request.

Along those lines, the fact that Class Counsel secured a favorable Settlement is not

relevant to assessing the risks attendant to the case which Class Counsel assumed.

> Courts have made it clear that if, by reason of their professional skill
> and determined efforts, plaintiffs' counsel are ultimately able to secure
> a settlement, that fact is not relevant to an assessment of the degree of
> risk that they assumed at the time of filing the litigation.

*Id.*, at 1340 n.2. The fact that Class Counsel took a substantial risk favors approval.

8. <u>Awards In Similar Cases</u>

There are numerous Eleventh Circuit decisions awarding up to (and

sometimes in excess of) one-third of the settlement value:

- *Waters v. Int'l Precious Metals, Inc.,* 190 F.3d 1291 (11th Cir. 1999) - awarding 33.33% of the common fund of $40 million.

- *Faught v. Am. Home Shield Corp.,* 668 F.3d 1233, 1243 (11th Cir. 2011) - affirming the district court's award of fees with two components: (1) a $1.5 million lump sum for non-monetary relief, and (2) 25% of the monetary compensation received by class members.

- *In re: Checking Account Overdraft Litig*., 830 F.Supp.2d 1330, 1362 (S.D. Fla. 2011) - approving 30% fee of potential pool of recovery.

- *In re: Int'l Recovery Corp. Sec. Litig.,* No. 92-1474-Civ-Atkins (S.D. Fla., June 2, 1994) - fee award represented 30% of class benefit.

- *In re: Sound Advice, Inc. Sec. Litig;* No. 92-6457-Civ-Ungaro-Benages (S.D. Fla. March 25, 1994) - awarding 30%.

- *Tapken v. Brown,* No. 90-0691-Civ-Marcus (S.D. Fla. 1995) - awarding 33%.

- *In re: Ampicillin Antitrust Lit*., 526 F.Supp. 494 (D. D.C. 1981) - 45% fee awarded.

- *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp*., 480 F.Supp. 1195 (S.D. N.Y. 1979) - approving 53% fee.

- *In re: U.S. Bancorp Lit.*, 291 F.3d 1035, 1038 (8th Cir. 2002) - approving 36% of the common fund as a fee.
- *In re: Crazy Eddie Sec. Lit.*, 824 F.Supp. 320 (E.D. N.Y. 1993) - awarding 33.8% of the common fund as a fee.

These fee awards demonstrate Class Counsel's petition for a fee of, at most, 13% of the of the constructive fund, is not only lower than this Circuit's "benchmark" range but is reasonable in light of the fees awarded in similar cases.

### C.   Class Counsel's Expenses

In addition, Class Counsel further request that the Court approve, pursuant to the Settlement, an Order granting them reimbursement for their litigation costs and expenses, to be paid directly from Defendants in the amount of $43,012.02.  *See* Garrison Decl., at ¶¶ 14-15.  This sum corresponds to Class Counsel's out-of-pocket costs and expenses, necessarily incurred and paid in connection with the prosecution and settlement of the action.   "It is appropriate to reimburse the out-of-pocket expenses of counsel whose efforts created substantial benefit for the class." *Columbus Drywall & Insulation v. Masco Corp.*, 2012 U.S. Dist. LEXIS 196030, *17-18 (N.D. Ga. Oct. 26, 2012).   Class Counsel's expenses are reasonable, necessary, and were incurred achieving a substantial benefit of the Class. Garrison Decl., at ¶ 15.  Therefore, Class Counsel's request for reimbursement of expenses in the amount of $43,012.02 payable directly by Defendants under the Settlement, is also reasonable and should be approved under this Circuit's law.

**D.      Class Representative Service Awards**

Plaintiffs, by and through Class Counsel, respectfully request Class Representative Service Awards totaling $65.000 ($5000 for each named Plaintiff). The Service Awards, agreed to by the Parties during mediation, are to be paid directly by Defendants in addition to the compensation they are otherwise entitled to as a member of the Proposed Class. *See* Dkt. No. 77-1, ¶5.2. Class Counsel has previously advised the Court they are aware of and sensitive to the Eleventh Circuit's recent opinion in *Johnson v. NPAS Solutions, Inc.*, which rejected class representative incentive awards. *Johnson v. NPAS Solutions, Inc.*, 975 F.3d 1244 (11th Cir. 2020). *See* Dkt. No. 77, pp. 35-37. However, an interested party in *Johnson* filed a petition for rehearing *en banc* on October 22, 2020, which has not yet been decided and appears to have caused the mandate to be withheld, leaving the law unsettled on this topic. *Id.* The opinion represents a fundamental change in the law, and prior to the *Johnson* opinion courts in this Circuit "routinely approve[d] incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the court of the class action litigation." *Allapattah Servs., Inc.*, 454 F.Supp.2d at 1218.

In support of the request for Service Awards to the Plaintiffs, it should be noted that each one spent significant time making their vehicles available for

inspection, providing information to Class Counsel, and responding to discovery requests.   *See* Dkt. No. 77, pp. 35-38. Given the significant commitment demonstrated by the Plaintiffs, Service Awards of $5,000 are appropriate.  However, should the Court deny the service awards request in light of *NPAS Solutions*, Plaintiffs again hereby request the Court do so without prejudice and retain jurisdiction for the limited purpose of revisiting the awards if *NPAS Solutions* is reversed.  *See Hawkins v. JPMorgan Chase Bank, N.A.*, 2020 U.S. Dist. LEXIS 213064, *3 (M.D. Fla. Nov. 15, 2020) (denying service award request "without prejudice"); *see also Metzler v. Med. Mgmt. Int'l*, 2020 U.S. Dist. LEXIS 187478, *8 (M.D. Fla. Oct. 9, 2020) (denying service award "at this juncture").   Class Counsel's request for payment of Class Representative Service Awards, payable directly by Defendants under the Settlement, is also reasonable and should be approved, subject to the ultimate outcome of *Johnson*.

## CONCLUSION

For all the reasons set forth herein, Plaintiffs and Class Counsel respectfully request an Order awarding Class Counsel attorneys' fees of **$4,456,987.98**, reimbursement of expenses in the amount of $**$43,012.02** and Class Representative Service Awards of $5000 for each Plaintiff.

Respectfully submitted this 21st day of April, 2022.

/s/ James F. McDonough, III
James F. McDonough, III (GA Bar No. 117088
ROZIER HARDT MCDONOUGH PLLC
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 840-9505
Email: jim@rhmtrial.com

/s/ Taylor C. Bartlett
W. Lewis Garrison, Jr. (GA Bar No. 286815)
Taylor C. Bartlett (GA Bar No. 778655)
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 326-3332
Email: lewis@hgdlawfirm.com
Email: taylor@hgdlawfirm.com

*Class Counsel for the Callen Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I caused the foregoing document to be electronically-filed with the Clerk of Court using this Court's CM/ECF system, which caused it to be served this day on all counsel of record who have consented to receive electronic service.

Respectfully submitted this 21st day of April, 2022.


<u>*/s/ James F. McDonough, III*</u>
James F. McDonough, III
(GA Bar No. 117088)


## <u>LOCAL RULE 7.1(D) COMPLIANCE CERTIFICATE</u>

Pursuant to L.R. 7.1(D), this certifies that the foregoing document complies with the font and point selections approved by L.R. 5.1(C). The foregoing document was prepared using Times New Roman font in 14 point.

Respectfully submitted this 21st day of April, 2022.


<u>*/s/ James F. McDonough, III*</u>
James F. McDonough, III
(GA Bar No. 117088)